M. Diane KOKEN, Insurance Commissioner of the Commonwealth of Pennsylvania, in her official capacity of Liquidator of Legion Insurance Company, Plaintiff

v.

ONE BEACON INSURANCE COMPANY, CGU Insurance Company, General Accident Insurance Company of America, White Mountain Insurance Group, LTD and Commercial Union Insurance Company, Defendants.

Commonwealth Court of Pennsylvania.

Argued Aug. 31, 2006.

Decided Oct. 31, 2006.

Ordered Published Nov. 28, 2006.

Charlotte E. Thomas, Philadelphia, for plaintiff.

P. Kevin Brobson, Harrisburg, for defendant.

OPINION BY Judge COHN JUBELIRER.

M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylva-nia (Liquidator),[1] in her official capacity as Liquidator of Legion Insurance Company (Legion), filed a Complaint[2] to recover alleged preferential payments totaling $6,400,000 received by One Beacon Insurance Company (OneBeacon) and/or their agents,[3] from Legion, on or about March 8, 2002. (Complaint, pp. 1–2.) OneBeacon has now filed an Application to Compel Answers to Interrogatories and Production of Documents seeking to compel the Liquidator to respond to and/or expound on its discovery requests.

## I. FACTUAL BACKGROUND

Legion reinsured OneBeacon on three separate Certificates of Facultative Insurance (collectively, the Reinsurance Certificates) with: (1) Associated Restaurant Management (ARM); (2) Sentinel Real Estate Corporation; and (3) New Plan Excel Realty Trust. Disputes arose among the parties over Legion's performance as the reinsurer under these programs and, in 2001 and 2002, the parties entered into arbitration proceedings. The arbitration panels, in separate proceedings, ordered Legion to (1) establish an escrow fund in the amount of $2.5 million with Legion's law firm, and (2) create a letter of credit in the amount of $4.9 million, both as security for payment of an award to OneBeacon.

1. We will also refer to M. Diane Koken as "Rehabilitator" and "Insurance Commissioner," depending upon the role she played during different portions of the proceedings with Legion Insurance Company (Legion).

2. The Liquidator filed this Complaint pursuant to her authority under Article V of the Pennsylvania Insurance Department Act of 1921(Act), Act of May 17, 1921, P.L. 789, added by Section 2 of the Act of December 14, 1977, P.L. 280, *as amended,* 40 P.S. §§ 221.1–221.63. Article V of the Act governs the rehabilitation and liquidation of insolvent insurers. *Koken v. Legion Ins. Co.,* 831 A.2d 1196, 1201 (Pa.Cmwlth.2003) (*Legion* ), *affirmed,* 583 Pa. 400, 878 A.2d 51 (2005).

3. Defendants include OneBeacon, CGU Insurance Company, General Accident Insurance Company of America, and Commercial Union Insurance Company. (Complaint ¶¶ 8, 9, 11.) Each of these defendants was included in the definition of "OneBeacon" in the Settlement Agreement executed by Legion and OneBeacon on March 6, 2002 (Complaint ¶ 14), and shall be referred to collectively in this opinion as "OneBeacon." The Insurance Commissioner filed a Notice of Discontinuance with the Court, as to White Mountain Insurance Group, Ltd. only, on February 23, 2006.

(Complaint ¶ 25.) However, on or about March 6, 2002, OneBeacon and Legion entered into a Confidential Settlement Agreement and Release (Settlement Agreement) to resolve the three pending arbitrations by commuting Legion's assumed reinsurance obligations to OneBeacon under the programs. (Complaint ¶ 26.) Legion was released from all past, current and future obligations to OneBeacon for an amount certain—$6.4 million—"to satisfy the antecedent debts under the Reinsurance Certificates." (Complaint ¶ 26.) On or about March 8, 2002, Legion paid the debts by transferring, to OneBeacon, $3.9 million of funds deposited to support the letter of credit and the $2.5 million cash escrow account. (Complaint ¶ 27.)

On March 28, 2002, this Court entered an order placing Legion into rehabilitation. This rehabilitation was prompted by Legion's cash flow problems, caused by reinsurers that failed to make timely payments.[4] *Koken v. Legion Ins. Co.*, 831 A.2d 1196, 1205 (Pa.Cmwlth.2003) (*Legion*), *affirmed*, 583 Pa. 400, 878 A.2d 51 (2005). On August 29, 2002, and amended on October 18, 2002, the Rehabilitator

filed a petition to place Legion into liquidation, alleging that: (1) it consented to its liquidation; (2) it was insolvent; and (3) "further rehabilitation of Legion ... [wa]s futile and [could have] substantially increase[d] the risk of loss to creditors, policyholders and the public." *Legion*, 831 A.2d at 1201. About one year later, on July 28, 2003, this Court granted the Rehabilitator's petition and Legion was placed into liquidation. (Complaint ¶¶ 5, 6.)

On July 22, 2005, the Liquidator filed a Complaint against OneBeacon,[5] claiming that funds paid as a result of the Settlement Agreement constitute preference payments, which are recoverable by the Legion estate. OneBeacon filed an Answer and New Matter on August 31, 2005. Thereafter, OneBeacon filed two sets of interrogatories: Discovery Set I on October 7, 2005,[6] and Discovery Set II on April 25, 2006.[7] To date, the Liquidator has produced 7,516 pages of documents, including the entire record on the liquidation petition.

On May 26, 2006, OneBeacon filed an Application to Compel Answers to Interrogatories and Production of Documents,

---

4. As of June 30, 2002, Legion showed a statutory surplus as regards to its policyholders of $289 million. *Legion*, 831 A.2d at 1208. As clearly stated by the Honorable Judge Leavitt, "[t]he problem [with Legion] is not impairment of statutory surplus, but the problem is with cash flow. As the Rehabilitator has acknowledged to the Court, the Insurance Department, at least since 1989, has never sought to liquidate an insurance company with a positive net worth, as is the case here." *Id.*

5. OneBeacon has raised several affirmative defenses to the Liquidator's Complaint, including, *inter alia*, estoppel, waiver, laches, unclean hands, and/or ratification. OneBeacon also challenges the Liquidator's decision to commence this action as arbitrary, capricious, and an abuse of her discretion.

6. Regarding Discovery Set I, OneBeacon identifies the following interrogatories and document requests as being deficient:

   1. Department's dealings with Legion—Interrogatory No. 8; Doc. Request Nos. 1, 4, 5, 6, 7 and 8.
   2. Liquidator's decision to commence preference action—Interrogatory Nos. 6, 7; Doc. Request No. 5.
   3. Legion's retrocessionaires—Interrogatory Nos. 11, 13 and 13(a); Doc. Request No. 10.

   (OneBeacon's Brief in Support of Application to Compel (One Beacon Br.) at 6–7.)

7. Regarding Discovery Set II, OneBeacon fails to articulate which interrogatory questions it believes the Liquidator did not sufficiently answer.

alleging the Liquidator failed and/or refused to respond to OneBeacon's requests in 3 specific areas: (1) the Insurance Department's dealings with Legion; (2) the Liquidator's decision to commence a preference action against OneBeacon; and (3) Legion's retrocessionaires.

The Liquidator served her answers and objections to OneBeacon's discovery requests, including the following reasons: (a) the requests are irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, vague, ambiguous, overly broad and unduly burdensome; (b) the definition of "you" encompasses so many individuals and entities to make a specific answer impossible; (c) the "relevant time period" is from March 28, 2001, until the present (five years); (d) the Insurance Department, in its regulatory capacity, is not a party to this litigation and examination materials obtained by the Department are protected from disclosure by the regulatory privilege; and, (e) there has been a lack of responsive communications (specifically addressed to Discovery Request # 2).

The Court reviewed all materials and then heard argument regarding OneBeacon's Application to Compel on August 31, 2006.

## II. LEGAL BACKGROUND

### A. *Discovery Rules*

Pennsylvania Rule of Civil Procedure 4003.1 permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Pa. R.C.P. 4003.1. Discovery requests often require courts to consider whether the information sought is relevant, reasonable, and not privileged.

Relevancy depends upon the nature and the facts of the individual case, and any doubts are to be resolved in favor of relevancy. 6 Stnd. Pa. Prac. § 34:23. The party seeking discovery need not justify complete relevance in advance. 6 Stnd. Pa. Prac. § 34:24. Furthermore, the objector to a discovery request must demonstrate non-discoverability; in this case, the Liquidator has the burden of "establishing the right to refuse discovery." *Id.* However, if there is nothing in the record from which relevancy can be ascertained, this Court may place the burden of establishing relevancy upon the requesting party. *Id.*

Discovery requests must also be *reasonable,* which is "to be adjudged on the facts and circumstances of each case." 6 Stnd. Pa. Prac. § 34:32. Discovery is liberally allowed, and all doubts should be resolved in favor of permitting discovery. 6 Stnd. Pa. Prac. § 34:23. However, a court can prohibit the discovery of matters which have been stated too broadly or without proper specification, and would amount to a "fishing expedition." 6 Stnd. Pa. Prac. § 34:28.

Further, discovery requests are permitted for non-privileged information only. 6 Stnd. Pa. Prac. § 34:35. Privilege must be claimed, and the burden of demonstrating a privilege is on the party seeking to limit disclosure. 6 Stnd. Pa. Prac. § 34:36. All professional communications are considered privileged, however, and the burden of showing otherwise is with the party alleging the privilege is inapplicable. *Id.*

### B. *Pertinent Insurance Law*

The Liquidator filed her Complaint "to recover preferential payments ... received by [OneBeacon] from Legion on or about March 8, 2002." (Complaint pp. 1–2.) Section 530 of the Act defines a "preference" as:

[A] transfer of any of the property of an insurer to or for the benefit of a creditor, for or on account of an antecedent debt, made or suffered by the insur-

er within one year before the filing of a successful petition for liquidation under this article the effect of which transfer may be to enable the creditor to obtain a greater percentage of this debt than another creditor of the same class would receive.

40 P.S. § 221.30(a). As is pertinent here, Section 530 explains that, where a liquidation order is entered while an insurer is subject to rehabilitation, "transfers otherwise qualifying shall be deemed preferences if made ... within one year before the filing of the successful petition for rehabilitation or within two years before the filing of the successful petition for liquidation, whichever time is shorter." *Id.* In such situations, the Act authorizes the Liquidator to avoid a preference under the following specific conditions:

> Any preference may be avoided by the liquidator, if (i) the insurer was insolvent at the time of the transfer; (ii) the transfer was made within four months before the filing of the petition; [or] (iii) the creditor receiving it or to be benefited thereby or his agent acting with reference thereto had, at the time when the transfer was made, reasonable cause to believe that the insurer was insolvent or was about to become insolvent.... Where the preference is voidable, the liquidator may recover the property....

40 P.S. 221.30(a).

## C. *"Insurance Regulatory Privilege"* [8]

In the Liquidator's Answer to Defendants' Supplement to Compel Answers to Interrogatories and Production of Documents (Liquidator Answer, Discovery Set II), the Liquidator argues that various sec-

tions of the Act protect submissions to the Insurance Department as "confidential, not deemed a public record, and not subject to the Right to Know Act." (Liquidator Answer, Discovery Set II, ¶ 12B, p. 7.) The Liquidator cites, as examples, the following sections in support of her argument:

- Section 1710, "Prevention of insolvencies"—added by Section 19 of the Act of December 18, 1992, P.L. 1519, 40 P.S. § 991.1710;
- Section 337.8, "Disposition of unassigned funds"—added by Section 4 of the Act of February 17, 1994, P.L. 92, 40 P.S. § 459.8;
- Section 320, "Annual and other reports; penalties"—40 P.S. § 443;
- Section 905, "Examination reports"— added by Section 12 of the Act of December 18, 1992, P.L. 1469, 40 P.S. § 323.5;
- Section 679–A, "Confidentiality"—added by Section 2 of the Act of December 6, 2002, P.L. 1183, 40 P.S. § 310.79;
- Section 512–A, "Confidentiality; prohibition on announcements; prohibition on use in ratemaking"—added by Section 1 of the Act of June 25, 1997, P.L. 349, 40 P.S. § 221.12–A;
- Section 513, "Conduct of hearing in summary proceedings"—added by Section 2 of the Act of December 14, 1977, P.L. 280, 40 P.S. § 221.13; and
- Section 301, "Computation of reserve liability"—40 P.S. § 71.

She also discusses the "deliberative process privilege" as protecting "pre-decisional, internal aspects of decision making—

---

8. This name is taken from the Liquidator's Answers and Objections to Defendants' Second Set of Interrogatories, in which the Liquidator identifies what she refers to as an "Insurance Regulatory Privilege" (Plaintiff's Answers and Objections to Defendants' Second Set of Interrogatories, ¶ 4, p. 2), which she contends is comprised of the statutory sections and common law discussed herein.

such as whether or when rehabilitation should be sought...." (Liquidator Answer, Discovery Set II, ¶ 12.)

The Liquidator is correct that each of the above-cited sections of the Act protects certain types of information submitted to the Department in particular situations. None of these sections, however, provides an across-the-board "regulatory privilege" as suggested by the Liquidator, and none are specifically applicable to the situation at bar.

■ As a general rule, the law of this Commonwealth does not favor evidentiary privileges. *Joe v. Prison Health Services,* 782 A.2d 24, 31(Pa.Cmwlth.2001).

"Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." Thus, courts should accept testimonial privileges "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth."

■ *Id.* (quoting *Commonwealth v. Stewart,* 547 Pa. 277, 282–283, 690 A.2d 195, 197 (1997)) (citations omitted). Nor does the "deliberative process privilege" provide the kind of global protection of information as proposed by the Liquidator. The Pennsylvania Supreme Court has explained that, "[t]he deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'" *Unified Judicial System v. Vartan,* 557

Pa. 390, 399, 733 A.2d 1258, 1263 (1999). Purely factual information, even if used by decision-makers in their deliberations, is usually not protected. *Id.* at 401, 733 A.2d at 1264. Moreover:

Such a privilege is not absolute; it must be demonstrated on a case by case basis. The court is called on to perform a balancing function—the interest of the government in ensuring the secrecy of the documents in question as opposed to the need of the private party to obtain discovery. The relative degree of the conflicting necessities will determine how each case is decided.

*Frankenhauser v. Rizzo,* 59 F.R.D. 339, 343 (E.D.Pa.1973) (citations omitted).

## III. ANALYSIS

In her Complaint, the Liquidator claims that payments of $6,400,000, which OneBeacon received pursuant to the Settlement Agreement on or about March 8, 2002, are voidable preferences. She bases her claim on her contention that *at the time the payments were made:* (1) Legion was insolvent (40 P.S. § 221.30(a)(i)); and (2) OneBeacon had reasonable cause to believe that Legion was, or was about to become, insolvent (40 P.S. § 221.30(a)(iii)).[9] (Complaint ¶ 32.) In preparation for defense of this claim, OneBeacon seeks discovery regarding: (1) the Insurance Department's pre-rehabilitation dealings with Legion; (2) the Liquidator's decision to commence a preference action against OneBeacon; and (3) Legion's retrocessionaires. The Liquidator has filed various objections to OneBeacon's requests.

9. The Liquidator has filed an Application to Amend Complaint seeking to include the text from Section 530(a)(ii) of the Act, 40 P.S. § 221.30(a)(ii), to paragraph 32 of the Complaint. That section states that any preference may be avoided by the liquidator if, "(ii) the transfer was made within four months before the filing of the petition...." According to paragraph 15 of the Application to Amend, counsel for OneBeacon has advised that it will not agree to the amendment of the Complaint.

**A.** *Insurance Department's Pre–Rehabilitation Dealings with Legion*

OneBeacon seeks information as to whether the Insurance Commissioner was aware of and/or approved the settlement and the payment of settlement funds in the weeks prior to her appointment as Rehabilitator of Legion. It contends that this information may reveal facts about Legion's condition at or around the time the alleged preferential transfers took place. In support of its argument, OneBeacon explains:

> [I]f the Department had no 'reasonable cause' to believe that Legion was or was about to become insolvent at the time of the alleged preferential transfers, the Liquidator would be hard-pressed to argue ... that OneBeacon had *better* information on Legion's financial condition in early March 2002 than did she or her team. Moreover, if the Department did, on or about the date of the alleged preferential transfers ..., have 'reasonable cause' to believe that Legion was or was about to become insolvent but, nonetheless, approved the Settlement and payment of the Settlement Funds to OneBeacon, then a relevant inquiry would be whether at that time OneBeacon was privy to the same facts and circumstances about Legion's financial condition as was the Department. If not, again, the Liquidator ... would be hard-pressed to argue that [OneBeacon] was "in the know" as to Legion's impending insolvency at the time it ... received the Settlement Funds.

(OneBeacon's Br. in Support of Application to Compel (OneBeacon Br.), at 10.)

The Liquidator objects to OneBeacon's "broad-ranging definition of the term 'you,'" which she says directs discovery requests to the Insurance Commissioner, in *both* her regulatory and liquidation capacities, *and* to her agents and employees acting within those respective responsibilities. She explains that "no amount of discovery showing that the Insurance Department knew of or approved the settlement could estop the Liquidator's claim to avoid this preference." (Liquidator Br. in Opposition to Application to Compel (Liquidator Br.) at 11.) She bases her argument primarily on the "separate capacities doctrine," and stresses that the conduct of the Insurance Department and its regulators prior to Legion's rehabilitation does "not impact whether the money paid to OneBeacon under the settlement agreement was fair when compared to the recovery available to other creditors." (Liquidator Br. at 12.) The Liquidator states that this case does not involve a "question of who knew what and when," as OneBeacon contends (OneBeacon Br. at 10), but, rather, involves the question of what *OneBeacon* knew, or had reasonable cause to know, and when.

■ Under the "separate capacities doctrine," a governmental entity, (in these examples, the Federal Deposit Insurance Corporation (FDIC)), when acting in one capacity, is treated as a separate entity when acting in another capacity. *United States v. Schroeder,* 86 F.3d 114, 117 (8th Cir.1996) (noting that "[u]nder the 'separate capacities' doctrine, it is well established that the [Resolution Trust Corporation (RTC)], when acting in one capacity, is not liable for claims against the RTC acting in one of its other capacities"); *Howell v. Federal Deposit Ins. Corp.,* 986 .F.2d 569, 574 (1st Cir.1993) (stating that the FDIC is treated as two separate persons when acting in its "corporate" role as regulator and when acting in its "receiver" role); *Federal Deposit Insurance Corporation v. Fonseca,* 795 F.2d 1102, 1109 (1st Cir.1986) (noting that "[c]orporate" FDIC and "[r]eceiver" FDIC are separate and distinct entities, and "corporate" FDIC is

not liable for the wrongdoing by "receiver" FDIC).

Pennsylvania law is in accord with this doctrine. *See Foster v. Monsour Med. Found.*, 667 A.2d 18, 19 (Pa.Cmwlth.1995) (single judge opinion by Pellegrini, J.); *Foster v. Rockwood Holding Co.*, 158 Pa. Cmwlth. 258, 632 A.2d 335, 338 (1993) (single judge opinion by Kelley, J.). The recent opinions of both *Monsour Medical Foundation* and *Rockwood Holding Company* hold, in essence, that actions of the Insurance Commissioner, while in her regulatory capacity and prior to the order of rehabilitation or liquidation, cannot be asserted as affirmative defenses in an action commenced by the Rehabilitator or the Liquidator.[10] Contrary to OneBeacon's argument that "this lawsuit is an action based on authority given to the Liquidator exclusively in her own right" (OneBeacon Br. at 12), the Insurance Commissioner, in her regulatory capacity, is not a party to this lawsuit, and the conduct of insurance regulators pre-rehabilitation is not an issue in this case.

■ When an order of liquidation is entered, the Liquidator is empowered to dispose of the insurer's assets, borrow money in the name of the insurer, enter into contracts, assert defenses available to the insurer, and exercise all rights and powers of any creditor, shareholder, policyholder or member. Section 523 of the Act, 40 P.S. § 221.23; *Monsour Med. Found.*, 667 A.2d at 19. The Liquidator is also empowered to "prosecute any action which may exist in behalf of the creditors, members, policyholders or shareholders of the insur-er against any ... other person," and to "continue to prosecute and to institute in the name of the insurer or in his [or her] own name any and all suits and other legal proceedings...." Sections 523 of the Act, 40 P.S. §§ 221.23.

■ In this scenario, the Liquidator "steps into the shoes of the insurer and recoups its assets" to protect the rights of its creditors, policyholders and shareholders. *Monsour Med. Found.*, 667 A.2d at 20; *TIG Specialty Ins. Co. v. Koken*, 855 A.2d 900, 913 (Pa.Cmwlth.2004). The Liquidator does not premise her claims upon any rights asserted by the Insurance Department or the Insurance Commissioner. *Monsour Med. Found.*, 667 A.2d at 20. As further explained:

> In light of the purpose of the Act to protect the public good, the Insurance Commissioner's power to recover damages for any wrongdoing should not be encumbered by an examination in court of the correctness of any specific act of the Insurance Commissioner in its receivership.
>
> . . . .
>
> Under the defendants' interpretation of the Act wherein the Insurance Commissioner would be subjected to certain affirmative defenses such as waiver, etc., the Insurance Commissioner would be forced to defend each act of regulatory conduct in any action the Insurance Commissioner brings to recover damages for wrongdoing. As a result, the efficiency and expediency with which the assets of the insolvent insurer are con-

---

10. OneBeacon argues these two Pennsylvania cases are not controlling precedent because they are each single-judge opinions. We look to these cases as persuasive authority, however, because "there is no controlling Pennsylvania case law dispositive of this issue." *Foster v. Monsour Med. Found.*, 667 A.2d 18, 19 (Pa.Cmwlth.1995) (looking "to the purpose behind the Act, as well as the statutory scheme dealing with liquidation, to determine whether the defendants may assert" actions of the Insurance Commissioner, prior to an order of liquidation of an insurance company, as an affirmative defense). Both of these cases cite to federal authority.

verted to cash to repay the losses incurred by the creditors and the insureds may be impaired thereby harming the public good.

*Rockwood Holding Co.*, 632 A.2d at 338–39.

■ Our courts have consistently found that pre-liquidation, pre-rehabilitation, regulatory conduct of the Insurance Commissioner cannot be raised against a Statutory Liquidator enforcing those rights.[11] Furthermore, the information OneBeacon requests can be "relevant" only if it is based on a legally cognizable argument. Therefore, OneBeacon's application to compel discovery, as it pertains to questions regarding the Insurance Department's pre-rehabilitation dealings with Legion, is denied.[12]

## B. *Liquidator's decision to commence preference action*

OneBeacon claims that it is entitled to find out why "the Liquidator has selectively chosen to pursue the $6.4 million paid to OneBeacon in March 2002," and whether, in doing so, she abused her discretion. (OneBeacon Br. at 16.) Therefore, OneBeacon is seeking information on the extent to which the Commissioner reviewed agreements or arrangements between Legion and other third-parties *similar* to the Settlement Agreement between Legion and OneBeacon in this case. OneBeacon explains that "the Commissioner's review and/or approval of similar arrangements with alleged creditors of Legion to the Settlement between OneBeacon and Legion at issue in this case is relevant to the question of whether the Liquidator has abused her discretion in commencing this lawsuit." (OneBeacon Br. at 17.)

The Liquidator argues that OneBeacon's premise, that it is entitled to discovery regarding the Liquidator's subjective decision to commence this lawsuit, creates the dangerous precedent of permitting a claim of arbitrary conduct and, consequently, allowing discovery on every discretionary decision made by the Liquidator. The Liquidator argues that discovery in the area of arbitrary conduct or selective prosecution is severely circumscribed, and should not be allowed in this case.

■ The doctrine of selective prosecution applies to enforcement by administrative agencies. *In re Frawley*, 26 Pa. Cmwlth. 517, 364 A.2d 748 (1976). The agency has sole responsibility to assess whether a violation has occurred and whether to expend agency resources on one particular enforcement action as opposed to another.[13] *Commonwealth v.*

---

11. Consequently, any discovery sought by OneBeacon to establish its affirmative defenses, such as waiver, estoppel, unclean hands, and/or ratification, based on the actions of the Insurance Department, is disallowed.

12. Furthermore, the Liquidator states that "[w]ithout waiver of any applicable privileges, based on an initial review, there was no approval of the Settlement Agreement by the Department." (Liquidator's Br. at 10.) In addition, neither the Rehabilitator, nor the Liquidator, could have approved the Settlement Agreement because the Court had not yet appointed the Commissioner to either of those roles when the Settlement Agreement was signed on March 6, 2002. (Petition for Rehabilitation granted March 28, 2002—*see* Section 515 of the Act, added by Section 2 of the Act of December 14, 1977, P.L. 280, 40 P.S. § 221.15; Order for Liquidation granted July 15, 2003—*see* Section 520 of the Act, added by Section 2 of the Act of December 14, 1977, P.L. 280, 40 P.S. § 221.20.)

13. Section 523(12) of the Act provides the Liquidator with such discretion. It provides, in pertinent part, that the Liquidator has power to "continue to prosecute and to institute ... all suits and other legal proceedings, ... and to abandon the prosecution of claims he [or she] deems unprofitable to pursue further." 40 P.S. § 221.23(12).

*Sanico, Inc.,* 830 A.2d 621, 629 n. 14 (Pa. Cmwlth.2003). To bring a claim for selective prosecution, a party must demonstrate that: (1) others, similarly situated, were generally not prosecuted for similar conduct, and (2) it was intentionally and purposefully singled out for an invidious reason. *Sanico, Inc.,* 830 A.2d at 629. The discretion involved in subjective assessment of the strength of a given claim and whether the best allocation of resources are spent on enforcement may not be compelled, and is not subject to judicial review, because such actions are not adjudicatory in nature. *Lerro v. Upper Darby Township,* 798 A.2d 817, 820–21 (Pa.Cmwlth. 2002) (citing *Commonwealth v. Malloy,* 304 Pa.Super. 297, 450 A.2d 689 (1982)); *Frawley,* 364 A.2d at 749.[14]

■ To obtain discovery in support of a claim of selective prosecution, evidence tending to show the existence of the essential elements of the defense, "discriminatory effect and discriminatory intent," must be produced. *United States v. Armstrong,* 517 U.S. 456, 468, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). OneBeacon contends, "Legion paid out approximately $90 to $100 million and likely millions more, during a time when the Liquidator alleges ... that Legion was actually insolvent, raises a substantial question as to why she has chosen to selectively prosecute her prefer-

ence action against OneBeacon for $6.5 million and has apparently chosen not to pursue this far larger pot of money." (OneBeacon Br. at 17.) In further support of this alleged "evidence," OneBeacon states that, to its knowledge, "no statutory liquidator in the Commonwealth of Pennsylvania has previously attempted to void a settlement of the type at issue in this case." (OneBeacon Br. at 16.)

■ In selective prosecution cases, the law is clear that the showing needed "to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Armstrong,* 517 U.S. at 464, 116 S.Ct. 1480. Here, OneBeacon has not met that showing—it has not alleged the required invidious grounds, or discriminatory intent, for the Liquidator's alleged selection. Therefore, OneBeacon's application to compel discovery, as it pertains to questions relating to the Liquidator's decision to commence the preference action against OneBeacon, is denied.[15]

## C. *Legion's retrocessionaires*

■ OneBeacon argues that, if it can prove a third party beneficiary relationship, it is entitled to a direct claim against Legion's retrocessionaires for losses under the ARM, Sentinel and New Plan insurance programs. OneBeacon also argues

---

14. As explained in *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.1965), executive officers of the government who have discretionary powers of prosecution often choose not to exercise such powers because of policy considerations wholly separate from the possibility that sufficient cause might exist to support a prosecutorial action.

15. The interpretation in this section is consistent with the discretion of the trustee in bankruptcy, as described in federal law. *See In re Sinder,* 102 B.R. 978 (Bankr.S.D.Ohio 1989) (noting that a determination by the trustee to avoid a preferential transfer, after having investigated, weighed and considered the merits

of the litigation commenced by a creditor, is consistent with the flexibility and the discretion contemplated by the legislative bankruptcy scheme and recognized in judicial decisions); *In re V. Savino Oil & Heating Co.,* 91 B.R. 655 (Bankr.E.D.N.Y.1988) (holding that a trustee has a substantial degree of prosecutorial discretion to sue or not to sue); *In re Milam,* 37 B.R. 865 (Bankr.N.D.Ga.1984) (noting the importance of the statutory policy that only an independent, impartial trustee in bankruptcy be responsible for weighing a number of competing factors to determine if avoiding powers should be exercised).

that it should not have to return the proceeds of its Settlement Agreement with Legion as a "voidable preference" *if* Legion has already been reimbursed by its retrocessionaires for its payment to One-Beacon. This double reimbursement would amount to a "windfall" for Legion. Furthermore, OneBeacon claims that in return for settlement funds, Legion contemporaneously received new value (the right to collect from its reinsurers), and was able to pursue it reinsurers for reimbursement of that loss. Therefore, One-Beacon argues that it should be permitted discovery regarding Legion's retrocessionaires and business Legion assumed from OneBeacon, in order to determine if Legion has recovered from them the amounts paid to OneBeacon in settlement funds.

■ The Liquidator counters with the general rule regarding reinsurance, citing *Legion,* 831 A.2d at 1234, that policyholders cannot have direct access to reinsurance proceeds. The Liquidator acknowledges an *exception* to this general rule, where the policyholder can establish a third party beneficiary relationship. *Id.*

However, if OneBeacon was a third party beneficiary, the Liquidator argues that OneBeacon *would already know* whether there were any retrocessionaires, and who they are. The Liquidator also contends, the issue of whether Legion will receive a windfall is irrelevant; rather, she argues, citing 40 P.S. § 221.34,[16] that she is entitled to recover from reinsurers, irrespective of payment, or lack of payment, to the insured.[17] The Liquidator further argues that there was no contemporaneous exchange for new value simply because One-Beacon entered into a settlement agreement.

Legion principally served as a "fronting company." *Legion,* 831 A.2d at 1202. As such, "Legion ... issued policies of insurance that were largely reinsured by other insurers." *Id.* Whether a company insured by Legion should be allowed direct access to reinsurance depends upon an examination "of the reinsurance arrangements in their entirety to discern the parties' rights and obligations." *Id.* at 1236. Specifically, in determining third party beneficiary rights [18] *under a reinsurance*

---

**16.** Section 534 provides:

> The amount recoverable by the liquidator from reinsurers shall not be reduced as a result of delinquency proceedings, regardless of any provision in the reinsurance contract or other agreement. Payment made directly to an insured or other creditor shall not diminish the reinsurer's obligation to the insurer's estate *except when the reinsurance contract provided for direct coverage of an individual named insured and the payment was made in discharge of that obligation.*

40 P.S. § 221.34 (emphasis added).

**17.** "'[U]nless the reinsurance contract provides for payments to the individual named insured, the liability of the reinsurer is intended to run to the estate of the insolvent insurer for the eventual benefit of the insureds and not directly to the policyholders of the insurer." *Eastern Eng'g & Elevator Co., Inc. v.*

*American Re–Insurance Co.,* 309 Pa.Super. 578, 455 A.2d 1235, 1237 (1983).

**18.** Under Pennsylvania law, the test for a third party beneficiary relationship, in general, references the standards of Section 302 of the Restatement (Second) of Contracts. *Legion,* 831 A.2d at 1236. Our Pennsylvania Supreme Court has summarized those standards as follows:

> [A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *unless,* the circumstances are so compelling that *recognition of the beneficiary's right is appropriate to effectuate the intention of the parties,* and the performance satisfies an obligation of the promise to pay money to the beneficiary or the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance.

*contract,* courts look to the extent of the reinsurer's involvement in the underlying insurance program. *Legion,* 831 A.2d at 1237 (citing, *e.g., Reid v. Ruffin,* 503 Pa. 458, 469 A.2d 1030 (1983); *Venetsanos v. Zucker, Facher & Zucker,* 271 N.J.Super. 459, 638 A.2d 1333 (App.Div.1994)). However, where a reinsurer: (1) underwrote the insurance policy in question; (2) undertook 100% of the risk from an insolvent fronting insurer; (3) retained final authority to negotiate and settle all claims on behalf of the fronting insurer; and (4) reimbursed the fronting insurer for all payments made under the policy, the policyholder was determined to be a third party beneficiary to the reinsurance contract and could proceed directly against the reinsurer upon the primary insurer's insolvency.[19] *Reid; Venetsanos.*

There are cases in which reinsurance information *may* raise confidentiality concerns. *See PECO Energy Co. v. Ins. Co. of North America,* 852 A.2d 1230, 1234 (Pa.Super.2004). However, there are also cases in which discovery of such information has been readily permitted. *Id.*[20] The alleged "dangers" of allowing discovery of this information appear to be unsupported,

considering that the reinsurance industry has endured despite widespread discovery. *PECO,* 852 A.2d at 1234 n. 6.

The information requested by OneBeacon satisfies the test of relevancy because Section 534 of the Act, 40 P.S. § 221.34 (*see* note 14, *supra*), authorizes direct access to reinsurance proceeds in certain instances. *Legion,* 831 A.2d at 1240. Consequently, it was the Liquidator's burden, because she objected to OneBeacon's discovery requests, to establish her right to refuse discovery by proving her concerns regarding the confidentiality of the requested materials, *see* 6 Stnd. Pa. Prac. § 34:24; here, the Liquidator did not meet her burden of proof.

Therefore, OneBeacon will be permitted discovery of information necessary to allow it to determine whether it can establish a third party beneficiary relationship with Legion's reinsurers and, thus, a direct right to access reinsurance in this case. Accordingly, OneBeacon's Application to Compel Answers to Interrogatories and Production of Documents is granted, in part, and denied, in part, in accordance with this opinion.[21]

---

*Id.* at 1236–37 (citing *Scarpitti v. Weborg,* 530 Pa. 366, 370–71, 609 A.2d 147, 149–50 (1992) (second emphasis added) (citations omitted)).

**19.** The defense of contemporaneous exchange for new value is not applicable here—"[s]imply because defendants entered into a settlement does not mean there was a contemporaneous exchange for new value." (Koken Br. at 15.) Creation and payment of new debt in cancellation of an antecedent debt violates the form and policy against preferences. *See In re Upstairs Gallery, Inc.,* 167 B.R. 915 (B.A.P.Cal.9th Cir.1994) (discussing contemporaneous exchange for new value in bankruptcy law, 11 U.S.C. § 547(a)(2)). "Settlement agreements which require expenditures by the debtor without tangible enhancement of the estate rarely provide new value of the sort contemplated by § 547(a)(2)." *In re Phoenix Restaurant Group, Inc.,* 316 B.R. 671, 680 (Bankr.M.D.Tenn.2004).

**20.** The Superior Court, in *PECO Energy Co. v. Ins. Co. of North America,* 852 A.2d 1230, 1234 (Pa.Super.2004), cites two unreported cases to support this premise: *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.,* 1991 WL 237636 at *3 (E.D.Pa. Nov.7, 1991) (holding that reinsurance information is always relevant to rebut defense); *Medmarc Casualty Ins. Co. v. Arrow Internat'l, Inc.,* 2002 WL 1870452 (E.D.Pa. July 29, 2002) (permitting discovery of unambiguous reinsurance policy, while noting that other reinsurance materials are irrelevant to determining intent of contracting parties or interpretation of unambiguous insurance policy provisions).

**21.** OneBeacon did not specify which of the Liquidator's responses to Discovery Set II are the subjects of its motion to compel. However, we disagree that a general regulatory privilege protects, across-the-board, all the infor-

## ORDER

**NOW,** October 31, 2006, the Application to Compel Answers to Interrogatories and Production of Documents filed by Defendants in the above-captioned matter is granted, in part, and denied, in part, in accordance with the content of the attached opinion, as follows:

(1) the following discovery requests regarding the Insurance Department's dealings with Legion are hereby denied:

- Discovery Set I—Interrogatory No. 8; Document Request Nos. 1, 4, 5, 6, 7 and 8.

(2) the following discovery requests regarding the Liquidator's decision to commence a preference action against OneBeacon are hereby denied:

- Discovery Set I—Interrogatory Nos. 6, 7; Document Request No. 5.

(3) the following discovery requests regarding Legion's retrocessionaires are hereby granted:

- Discovery Set I—Interrogatory Nos. 11, 13, 13(a); Document Request No. 10.

mation requested therein from discovery, and, we note there *may be* deficiencies in some of the Liquidator's responses. Accordingly, One Beacon should review the Liquidator's responses to Discovery Set II in light of our analysis of OneBeacon's requests and the Liquidator's responses to Discovery Set I included herein. If, after this review and attempts to resolve these issues with the Liquidator, there are outstanding issues, OneBeacon may again petition the Court to compel discovery of those particular items.