Gerald A. GREENBERGER, Petitioner

v.

PENNSYLVANIA INSURANCE DEPARTMENT, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 14, 2012.

Decided March 7, 2012.

Gerald A. Greenberger, New York, and Charles P. Neely, Philadelphia, for petitioner.

Karl S. Myers, Philadelphia, for respondent Pennsylvania Insurance Department and intervenor Reliance Insurance Company (In Liquidation).

Steven B. Davis, Philadelphia, for intervenor Reliance Insurance Company (In Liquidation).

BEFORE: PELLEGRINI, President Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY President Judge PELLEGRINI.

Gerald A. Greenberger (Requestor) petitions for review from a final determination of the Office of Open Records (OOR) denying his appeal requesting certain documents under the Right–to–Know Law (RTKL)[1] from the Pennsylvania Department of Insurance (Department) and Reliance Insurance Company related to Reinsurance Offset Guidelines that were issued by the Department on the basis that the documents are "internal, pre-decisional deliberations." For the reasons that follow, we vacate the OOR's determination for lack of jurisdiction.

This case involves Reliance Insurance Company (Reliance), which has been in liquidation since October 3, 2001, when the Department took over as Statutory Liquidator. This matter arose on December 3, 2010,[2] when Requestor submitted a RTKL request to the Department and Reliance seeking:

All documents constituting or relating to the drafting of the "Reinsurance Offset Guidelines," a copy of which is Exhibit A hereto, including but not limited to all drafts, reviews, comments, and legal analyses.

(Original Record at Tab Number 1.)

The Reinsurance Offset Guidelines are summarized as follows:

In the administration of the estate of Reliance Insurance Company (in Liquidation), reinsurers may apply offsets to balances owed to Reliance Insurance Company (in liquidation) if the debts and credits are mutual, and only where allowed under (1) Pennsylvania statute, (2) the terms of the specific reinsurance contracts involved provided the contract is not inconsistent with the statute, and (3) the parameters outlined in any applicable scenarios below. All these conditions must be satisfied. It is also important to note that Reliance companies that were merged into Reliance Insurance Company will be treated as one and the same legal entity for purposes of applying these roles because of the Merger.

(Reproduced Record at 13a–14a.)

The Guidelines then provide six different scenarios: 1) offsets within the same contract Reliance is cedent (recoupment); 2) offsets across multiple contracts where Reliance is cedent in all contracts; 3) offsets across multiple contracts where Reli-

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104, effective January 1, 2009.

2. According to the Department and Reliance's brief, Requestor represents Republic Western in related litigation before this Court against Reliance. *See Republic Western Insurance Company v. Reliance Insurance Company in Liquidation (Ancillary Matter to In Re: Reliance Ins. Co. in Liquidation, No. 1 REL 2001),* Cmwlth. Ct. Dkt. No. 12 REL 2009. In the related case, which commenced in April 2009,

Republic Western, Requestor's client, and Reliance are in a dispute over whether Republic Western, a reinsurer of Reliance, has a right to setoff certain reinsurance obligations to Reliance against certain obligations that Republic Western ceded to Reliance. In order to aid his litigation efforts against Reliance, Requestor submitted extensive RTKL requests to the Department and Reliance. Most answers to requests were provided to Requestor. (Department and Reliance's brief at 2.)

ance is cedent in some contracts and assuming reinsurer in other contracts wherein there is only a single-named reinsured company ceding to Reliance; 4) offsets across multiple contracts where Reliance is cedent in some contracts and assuming reinsurer in other contracts wherein there are multiple affiliated-named reinsured companies ceding to Reliance; 5) special rules for pools and associations; and 6) prohibited offsets. (Reproduced Record at 13a–14a.)

By letter dated February 10, 2011, the Department denied Requestor's request for this information because they were exempt from disclosure under:

> [a]ll documents constituting or relating to the drafting of 'Reinsurance Offset Guidelines' ... is exempt from disclosure under 65 P.S. §§ 67.708(b)(10) because these records reflect internal predecisional deliberations. Any notes, comments, thoughts, basis or reasoning related to the review and drafting of the 'Reinsurance Offset Guidelines' are internal among and between Reliance and Department staff. They were predecisional, as they were provided for consideration before the policy decision as to how to treat, handle and process reinsurance offsets was made, and they were deliberative in character, as they involve and/or contain internal analysis, discussions, opinions, recommendations or subjective viewpoints used in making the decision as to how to treat, handle and process reinsurance offsets.

(Original Record at Tab Number 2.)

Requestor filed an appeal with the OOR contending that the requested documents did not involve internal predecisional deliberations because the documents requested were not internal among and between Reliance and Department staff as Reliance was a separate entity from the Department. "When acting as Liquidator of Reliance, the Insurance Commissioner is acting in a different capacity from his position as head of the Insurance Department. This is called the 'separate capacities doctrine.' *See Koken v. One Beacon Ins. Co.,* 911 A.2d 1021, 1028–1029 (Pa. Commw.Ct.2006) ('Under the separate capacities doctrine, a governmental entity ... is treated as a separate entity when acting in another capacity.')" (Original Record, March 1, 2011 Letter at 6, Tab Number 3.) He also argued that the documents were not predecisional because they were not to be used to determine future conduct as the Reinsurance Offset Guidelines were neither a decision nor a policy since they were not intended to be a definitive statement of criteria to govern future conduct but intended to bolster the Statutory Liquidator's position in obtaining payments from Reliance's reinsurers.

Before making its decision, the OOR sent Requestor and the Department a letter dated March 3, 2011, asking them specifically "to provide their position as to whether Reliance Insurance is an agency required to respond to RTKL requests as that term is defined under the RTKL. The Insurance Department is asked to clarify its position as to whether it responded to the request on behalf of Reliance Insurance as an 'agency,' as a third party contractor, or otherwise." (Original Record at Tab Number 4.) Requestor responded by writing a letter to the OOR maintaining his position that Reliance was an agency which was required to respond to the RTKL request. He further added that because Reliance had already responded without stating any such objection, that hypothetical issue had been waived and was now moot. "New issues cannot be raised on appeal, as demonstrated in the February 28, 2011 Appeal at page 8 of 9." (Original Record, March 4, 2011 Letter at Tab Number 6.)

The Department responded that it was the Statutory Liquidator of Reliance. It explained that this Court declared Reliance insolvent and ordered it into liquidation effective October 3, 2001. The Liquidation Order appointed M. Diane Koken, Pennsylvania Insurance Commissioner and her successors in office, as Liquidator of Reliance and ordered her to take possession of Reliance property and to liquidate its business.[3]

The Department further explained the Liquidator's responsibilities regarding Reliance:

> The Statutory Liquidator is a Court appointed position, pursuant to the statutory authority cited above, and thus is a greater, more significant relationship than that of a contractor or agent. Specifically, the Commissioner is empowered, by operation of law, with the title to all of the property, contracts and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, as of the date of the filing of the petition for liquidation. 40 P.S. § 221.20(c). In sum, the Commissioner, as the Statutory Liquidator, stands in the place of the company and marshals assets in order to maximize the assets of the estate and to protect the interests of all policyholders and creditors as a whole.

With respect to records, the only records of a company in liquidation that the Department would have are those of the Statutory Liquidator. The Department's other regulatory functions are separate and distinct and do not come into play with a company in liquidation. Also, if it were not for the liquidation of Reliance, and the Commissioner's unique statutory position as the liquidator, the RTKL would not apply and the requester would not have access to any records of Reliance.

In his appeal, Mr. Requestor refers to the "separate capacities doctrine" and cites *Koken v. One Beacon Ins. Co.,* 911 A.2d 1021, 1028–1029 (Pa.Commw.2006) to assert that "Reliance and its Liquidator is a separate and distinct entity from the Insurance Department, and correspondence *between* the Insurance Department and Reliance is not 'internal.'" Requestor Appeal p. 6. The 'separate capacities doctrine' is inapplicable in the present matter as the Insurance Department has been acting in one singular capacity since the entry of the

---

**3.** Pursuant to Section 520 of the Insurance Department Act of 1921(Act), May 17, 1921, P.L. 789, *as amended,* added by the Act of December 14, 1977, P.L. 280, 40 P.S. § 221.20, the Commissioner may apply by petition to this Court for an order directing him or her to liquidate a domestic insurer. An order to liquidate the business of a domestic insurer shall appoint the Commissioner and his or her successors in office liquidator and shall direct the liquidator to take possession of the assets of the insurer and to administer them under the orders of this court.

Section 503 of the Act, 40 P.S. § 221.23, provides the liquidator with the power to, *inter alia,* appoint a special deputy to act for him or her and have all the powers of the liquidator; to employ employes and agents, legal counsel and other personnel as necessary to assist in the liquidation; to remove any or all records and property of the insurer to the offices of the commissioner or to such other place as may be convenient for the purposes of efficient and orderly execution of the liquidation; to assert all defenses available to the insurer as against third persons; and to intervene in any proceeding wherever instituted that might lead to the appointment of a receiver or trustee and to act as the receiver or trustee whenever the appointment is offered.

Section 526 of the Act, 40 P.S. § 221.26(a), provides that upon issuance of an order appointing the Commissioner liquidator of a domestic insurer, no action at law or equity shall be brought by or against the insurer. The liquidation may defend any action in which he or she intervenes under this section at the expense of the estate of the insurer.

Liquidation Order on October 3, 2001, that of Statutory Liquidator. As the Liquidator stands in the shoes of Reliance such that they are one and the same entity for purposes of liquidation, correspondence and/or communications between Reliance and the Liquidator are internal.

(Original Record, March 8, 2011 Letter at Tab Number 7.) Keith Kaplan, the Executive Vice President of Reliance, drafted, prepared and reviewed the Reinsurance Offset Guidelines. He stated that the "Guidelines were drafted to be a pronouncement and determination of the 'rules of the road' concerning setoff in the Reliance Liquidation." (Original Record, Kaplan Affidavit, Tab Number 9.)

The OOR issued its decision denying Requestor's request because, in order for the RTKL exemption to apply found at Section 708 of the RTKL, 65 P.S. §§ 67.708(b)(10), three elements had to be satisfied: 1) the deliberations reflected were "internal" to the agency; 2) the deliberations reflected were predecisional, i.e., before a decision on an action; and 3) the contents were deliberative in character, i.e., pertaining to a proposed action. In this case, the OOR determined that the evidence indicated that the records were created that reflected discussions and thoughts prior to deciding upon the content in the finalized Reinsurance Offset Guidelines. The finalized Reinsurance Offset Guidelines reflected the end result or decision of the deliberations and the notes, memorandum and other withheld records were predecisional. The OOR also determined that the records of Reliance were internal because they were in the possession, custody and control of the Department as a result of the Commissioner's appointment as Statutory Liquidator. The Department, operating in its capacity as Statutory Liquidator of Reliance, worked with consultants and employees of Reliance to prepare the Reinsurance Offset Guidelines. Here, the records sought were created after Reliance was ordered into liquidation and while the Department was acting in its capacity as Statutory Liquidator or stepped into the shoes of Reliance. This appeal by Requestor followed in which he raises the same issues as he raised before the OOR.[4]

We need not address those issues, however, because the OOR did not have jurisdiction to hear this matter as the Statutory Liquidator, and the Department, when aiding the Statutory Liquidator, and Reliance are acting pursuant to a court order and under the supervision of this court.[5]

On May 29, 2001, the Commonwealth Court entered an order appointing the In-

---

4. In *Bowling v. Office of Open Records*, 990 A.2d 813 (Pa.Cmwlth.2010), we determined for the first time that our standard of review when reviewing OOR orders was as follows: "A reviewing court, in its appellate jurisdiction, independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency." *Bowling*, 990 A.2d at 818. The appropriate scope of review was "that a court reviewing an appeal from an OOR hearing office is entitled to the broadest scope of review." *Id.*, 990 A.2d at 820. We note, however, that our Supreme Court granted a petition for allowance of appeal to specifically determine the proper standards of review in RTKL cases. *Bowling v. Office of*

*Open Records*, 609 Pa. 265, 15 A.3d 427 (2011).

5. The issue of subject matter jurisdiction may be raised by the parties at any stage of the proceedings or by the court *sua sponte. City of Philadelphia v. White*, 727 A.2d 627, 630 (Pa. Cmwlth.1999). Lack of subject matter jurisdiction of a court or administrative tribunal to act in a matter is an issue that neither can be waived by the parties, nor can the parties confer subject matter jurisdiction on a court or tribunal by agreement or stipulation. *Blackwell v. State Ethics Commission*, 523 Pa. 347, 358, 567 A.2d 630, 636 (1989); *Mastro-*

**630**

surance Commissioner for the Commonwealth of Pennsylvania to serve as Rehabilitator of Reliance pursuant to Article V, Section 515 of the Act, 40 P.S. § 221.15.[6] The order placed all of Reliance's assets under the control of the Insurance Commissioner and the Commonwealth Court. On October 3, 2001, the Commonwealth Court declared Reliance insolvent,[7] terminated rehabilitation, and placed it into liquidation[8] with the Insurance Commissioner appointed as Statutory Liquidator.

■ While the Statutory Liquidator is responsible for winding up the affairs of the insolvent insurer, it is always under the supervision of this court. This court can also require the Statutory Liquidator to make such reports to the court at such times and in such manner as the court shall require. Section 508 of the Act, 40 P.S. § 221.8. Moreover, this court has to approve the distribution of assets of the insolvent insurer, Section 536 of the Act, 40 P.S. § 221.36(a); can approve, disapprove or modify claims against the insolvent insurer, Section 545(a) and (b) of the Act, 40 P.S. §§ 221.45(a) and (b); at its direction, have the liquidator pay distributions in a manner that will assure the proper recognition of priorities and a reasonable balance between the expeditious completion of the liquidation and the protection of unliquidated and undetermined claims, including third-party claims, Section 546 of the Act, 40 P.S. § 221.46; and approve the discharge of the Statutory Liquidator's discharge, Section 548 of the Act, 40 P.S. § 221.48.

■ By court order, as authorized by the Insurance Act, this court has general supervision over the Statutory Liquidator and the insolvent estate. Any complaint regarding how the insolvency is being ad-

cola v. Southeastern Pennsylvania Transportation Authority, 941 A.2d 81 (Pa.Cmwlth.2008).

6. Section 515 provides, in pertinent part, as follows:

An order to rehabilitate the business of a domestic insurer, or an alien insurer domiciled in this Commonwealth, shall appoint the commissioner and his successors in office the rehabilitator, and shall direct the rehabilitator forthwith to take possession of the assets of the insurer including any deposits held by the commissioner, and to administer them under the orders of the court. The filing or recording of the order with the clerk of the Commonwealth Court or recorder of deeds of the county in which the principal business of the company is conducted, or the county in which its principal office or place of business is located, shall impart the same notice as a deed, bill of sale or other evidence of title duly filed or recorded with that recorder of deeds would have imparted.

7. The declaration of insolvency was pursuant to 40 P.S. § 221.20(f) which provides, in pertinent part:

At the time of petitioning for an order of liquidation, or at any time thereafter, the commissioner, after making appropriate findings of an insurer's insolvency, following an administrative hearing, may petition the court for a judicial declaration of such insolvency. After providing such notice and hearing as are permitted for appeals from administrative agencies, the court may make the declaration.

8. 40 P.S. § 221.18 addresses liquidation, as follows:

Whenever he has reasonable cause to believe that further attempts to rehabilitate an insurer would substantially increase the risk of loss to creditors, policy and certificate holders, or the public, or would be futile, the rehabilitator may petition the Commonwealth Court for an order of liquidation. A petition under this subsection shall have the same effect as a petition under section 520.[] The Commonwealth Court shall permit the directors to take such actions as are reasonably necessary to defend against the petition and may order payment from the estate of the insurer of such costs and other expenses of defense as justice may require.

ministered has to be directed to this court, and any records supporting that complaint can only be obtained through court order. Simply put, the RTKL is inapplicable to rehabilitation or liquidation proceedings because they are solely within the control of the court under the Insurance Act. Consequently, this Court and not the OOR had jurisdiction over "all documents constituting or relating to the drafting of the Reinsurance Offset Guidelines" which Requestor requested. Because the OOR lacked jurisdiction, it improperly made a determination as to whether or not Requestor was entitled to those documents.[9]

Accordingly, the decision of the OOR is vacated for lack of jurisdiction.

## ORDER

AND NOW, this 7th day of March, 2012, the order of the Office of Open Records, dated May 2, 2011, is vacated for lack of jurisdiction.

9. Even if this Court did not have sole jurisdiction over this request, we would rule against the Requestor and determine that the documents related to the Reinsurance Offset Guidelines were predecisional. The affidavit of Keith Kaplan, the Executive Vice President of Reliance, made it clear that the Reinsurance Offset Guidelines were not merely "rules of the road" but were intended to be a "final determination," a "policy determination," "pronouncement," or "course of action" on offsets. Because the affidavit reflects that there were documents used in the process to reach the "decision," those documents were deliberative and predecisional.