OPINION OF THE COURT
Jeffrey Arlen Spinner, J.
Ordered, that defendant Steelcase’s motion is hereby granted as set forth herein below.
Defendant Steelcase moves this court for an order granting said defendant access to plaintiffs current and historical Face-book and MySpace pages and accounts, including all deleted pages and related information upon the grounds that plaintiff has placed certain information on these social networking sites which is believed to be inconsistent with her claims in this action concerning the extent and nature of her injuries, especially her claims for loss of enjoyment of life.
The present application was brought on by order to show cause. The court has reviewed the submissions both in favor of and in opposition to the relief sought, as well as the applicable federal statutory law, specifically the Stored Communications Act (18 USC § 2701 et seq.), which prohibits an entity such as Facebook and MySpace from disclosing such information without the consent of the owner of the account (see 18 USC § 2702 [b] [3]; Flagg v City of Detroit, 252 FRD 346, 352 [ED Mich 2008]).
Scope of Permissible Discovery
Pursuant to CPLR 3101, there shall be full disclosure of all nonprivileged matter which is material and necessary to the defense or prosecution of an action. To this end, trial courts have broad discretion in the supervision of discovery, and in determining what is “material and necessary” (see Allen v Crowell-Collier Publ. Co., 21 NY2d 403 [1968]; Andon v 302-304 Mott St. Assoc., 94 NY2d 740 [2000]; Cabellero v City of New York, 48 AD3d 727 [2d Dept 2008]). Within the context of discovery, “necessary” has been interpreted as meaning “ ‘needful’ and not indispensable” (see Allen at 407). The “material and necessary” standard is to be interpreted liberally, requiring disclosure of “any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason” (see Allen, 21 NY2d at 406; Andon, supra; Hoenig v Westphal, 52 NY2d 605, 608 [1981] [pretrial discovery is to be encouraged, limited only by a test for materiality of “usefulness and reason”]).
*428 Each discovery request is to be decided on a case-by-case basis, keeping in mind the strong public policy in favor of open disclosure (see Andón at 747). If the information sought is sufficiently related to the issues in litigation so as to make the effort to obtain it in preparation for trial reasonable, then discovery should be permitted (see Allen at 406-407; Matter of Beryl, 118 AD2d 705 [2d Dept 1986]). It is immaterial that the information sought may not be admissible at trial as “pretrial discovery extends not only to proof that is admissible but also to matters that may lead to the disclosure of admissible proof’ (see Twenty Four Hour Fuel Oil Corp. v Hunter Ambulance, 226 AD2d 175, 175 [1st Dept 1996]; Polygram Holding, Inc. v Cafaro, 42 AD3d 339, 341 [1st Dept 2007] [“ ‘disclosure extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof,’ including material which might be used in cross-examination”]).
Information Sought from Internet Sites
Plaintiffs who place their physical condition in controversy may not shield from disclosure material which is necessary to the defense of the action (see Hoenig v Westphal, supra). Accordingly, in an action seeking damages for personal injuries, discovery is generally permitted with respect to materials that may be relevant to both the issue of damages and the extent of a plaintiffs injury (see Walker v City of New York, 205 AD2d 755 [2d Dept 1994]), including a plaintiff’s claim for loss of enjoyment of life (see Orlando v Richmond Precast, Inc., 53 AD3d 534 [2d Dept 2008] [in an action to recover damages for personal injuries, records sought were material and necessary to the defense regarding plaintiffs claim of loss of enjoyment of life]; Vanalst v City of New York, 276 AD2d 789 [2d Dept 2000]; Mora v Saint Vincent’s Catholic Med. Ctr. of N.Y., 8 Misc 3d 868 [Sup Ct, NY County 2005]).
Thus, in Sgambelluri v Recinos (192 Misc 2d 777 [Sup Ct, Nassau County 2002]), an action arising out of a motor vehicle accident, the court held that plaintiffs wedding video taken two years after the incident was clearly relevant to the claim of permanency of injuries. As a result of the accident, plaintiff alleged that she sustained permanent injuries to her neck and back, and testified at her deposition that she can no longer participate in certain activities such as running or horseback riding. Defendant sought a copy of her wedding video on the basis that it might have shown plaintiff in various activities such as dancing, which would be relevant to the claims. Plaintiff objected on *429 the basis of the personal nature of the video. The court decided in favor of disclosure, noting its relevancy to the claim of permanency of injuries. In so finding, the court reasoned that although the video is not a surveillance tape, as contemplated by CPLR 3101 (i), the statute’s
“language [is] broad enough to encompass any film, photograph or videotape . . . involving a person referred to in paragraph one of subdivision (a), i.e., a party. This is consistent with the general policy of New York courts, allowing liberal disclosure. Moreover, the 1993 addition of subdivision (i) only strengthens the argument for open disclosure.” (Id. at 779-780 [internal quotation marks omitted].)
Like the plaintiff in Sgambelluri, plaintiff herein also claims she sustained permanent injuries as a result of the incident and that she can no longer participate in certain activities or that these injuries have affected her enjoyment of life. However, contrary to plaintiffs claims, Steelcase contends that a review of the public portions of plaintiffs MySpace and Facebook pages reveals that she has an active lifestyle and has traveled to Florida and Pennsylvania during the time period she claims that her injuries prohibited such activity. In light of this, defendant sought to question plaintiff at her deposition regarding her MySpace and Facebook accounts, to no avail, and following those depositions, served plaintiff with a notice for discovery and inspection requesting, inter alia, “authorizations to obtain full access to and copies of Plaintiffs current and historical records/ information on her Facebook and MySpace accounts.” Plaintiff has refused to provide the requested authorizations.
Both Facebook and MySpace are social networking sites where people can share information about their personal lives, including posting photographs and sharing information about what they are doing or thinking. Indeed, Facebook policy states that “it helps you share information with your friends and people around you,” and that “Facebook is about sharing information with others.”[1] Likewise, MySpace is a “social networking service that allows Members to create unique personal profiles online in order to find and communicate with old and new friends” and is self-described as an “online community” where “you can share photos, journals and interests with your growing network *430 of mutual friends,”[2] and as a “global lifestyle portal that reaches millions of people around the world.”[3] Both sites allow the user to set privacy levels to control with whom they share their information.
The information sought by defendant regarding plaintiffs Facebook and MySpace accounts is both material and necessary to the defense of this action and/or could lead to admissible evidence. In this regard, it appears that plaintiffs public profile page on Facebook shows her smiling happily in a photograph outside the confines of her home despite her claim that she has sustained permanent injuries and is largely confined to her house and bed. In light of the fact that the public portions of plaintiffs social networking sites contain material that is contrary to her claims and deposition testimony, there is a reasonable likelihood that the private portions of her sites may contain further evidence such as information with regard to her activities and enjoyment of life, all of which are material and relevant to the defense of this action. Preventing defendant from accessing plaintiffs private postings on Facebook and MySpace would be in direct contravention to the liberal disclosure policy in New York State.
Although there is no New York case law directly addressing the issues raised by this application, there are instructive cases from other jurisdictions. Recently, in Ledbetter v Wal-Mart Stores, Inc. (2009 WL 1067018, 2009 US Dist LEXIS 126859 [Civ Action No. 06-cv-01958-WYD-MJV, D Colo, Apr. 21, 2009]), defendant store sought, via subpoena, production of the content of plaintiffs’ social networking sites.[4] Information contained on the public access areas contradicted plaintiffs’ allegations regarding the effect of their injuries on their daily lives. When the networking sites refused to provide the information absent plaintiffs’ consent or request, defendant moved to compel production and plaintiffs moved for a protective order. Both plaintiffs had claimed physical and psychological injuries as a result of the accident which gave rise to lawsuit. By order dated April 21, 2009, Magistrate Judge Watanabe denied plaintiffs’ motion and held that the information sought by the subpoenas *431 was “reasonably calculated to lead to the discovery of admissible evidence as is relevant to the issues in the case.” (2009 WL 1067018, *2, 2009 US Dist LEXIS 126859, *5.)
Likewise, in Leduc v Roman (2009 CarswellOnt 843 [Feb. 20, 2009]), a matter pending in the Superior Court of Justice, Ontario, Canada, defendant also requested production of the plaintiff’s Facebook pages, including private pages. Plaintiff claimed that as a result of injuries allegedly sustained in a car accident, his enjoyment for life had lessened. Canadian law requires that each party disclose every document relating to any matter in the action over which he has possession or control absent a claim of privilege. Plaintiff had failed to disclose the information, which defendant only learned about following a defense psychiatric examination. After only being able to access the limited portions of plaintiffs public profile page, defendant sought an order requiring production of all site materials as well as preservation of the materials. The decision denying the request was reversed on appeal, with the appellate court disagreeing that defendant was on a fishing expedition. In this regard, Judge Brown noted that it was “beyond controversy” that a person’s Facebook pages may contain relevant documents (1i 23); that other Canadian cases had permitted into evidence photographs posted on a person’s Facebook page showing them engaged in activities despite their claim to the contrary; and that it is reasonable to infer from the social networking purpose of Facebook that even if a person only maintains a private profile, with the public profile merely listing their name, relevant information exists on their limited-access private pages (IT 36). In deciding to permit the examination into the private Facebook profile, the court set forth:
“To permit a party claiming very substantial damages for loss of enjoyment of life to hide behind self-set privacy controls on a website, the primary purpose of which is to enable people to share information about how they lead their social lives, risks depriving the opposite party of access to material that may be relevant to ensuring a fair trial.”(11 35; see also Kent v Laverdiere, 2009 CarswellOnt 1986 [Ont Sup Ct, Apr. 14, 2009] [as plaintiff asserted that accident disfigured her and lessened her enjoyment of life, any photos on Facebook or MySpace showing her in healthy state, enjoying life, would be relevant]; Bishop v Minichiello, 2009 BCSC 358 [Apr. 7, 2009] [defendant’s motion for production of *432 plaintiffs computer’s hard drive so it could analyze how much time plaintiff spent on Facebook granted as the information sought was relevant to the issues in the case]; Goodridge v King, 2007 CarswellOnt 7637 [Ont Sup Ct, Oct. 30, 2007] [in action in which plaintiff claimed various injuries, including loss of enjoyment of life and disfigurement following a car accident, photos posted by plaintiff on her Facebook account were evidence to the contrary, showing her socializing and dating]; Kourtesis v Joris, 2007 CarswellOnt 5962 [Ont Sup Ct, Sept. 24, 2007] [in proceeding concerning costs, court noted that during trial, Facebook photos of plaintiff were important element of case; apparently plaintiff testified that she no longer had a social life because of her injuries, yet the photographs taken after the accident showed her at a party].)[5]
Thus, it is reasonable to infer from the limited postings on plaintiffs public Facebook and MySpace profile pages that her private pages may contain material and information that are relevant to her claims or that may lead to the disclosure of admissible evidence. To deny defendant an opportunity to access these sites not only would go against the liberal discovery policies of New York favoring pretrial disclosure, but would condone plaintiffs attempt to hide relevant information behind self-regulated privacy settings.
Plaintiffs Privacy Concerns
Production of plaintiffs entries on her Facebook and MySpace accounts would not be violative of her right to privacy,[6] and any such concerns are outweighed by defendant’s need for the information.
The Fourth Amendment’s right to privacy protects people, not places (see Katz v United States, 389 US 347, 351 [1967] [“What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection”]). In determining whether a right to privacy exists via the Fourth Amendment, courts apply the reasonableness *433 standard set forth in the concurring opinion of Justice Harlan in Katz\ “first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable.” {Id. at 361 [internal quotation marks omitted].)
New York courts have yet to address whether there exists a right to privacy regarding what one posts on their on-line social networking pages such as Facebook and MySpace. However, whether one has a reasonable expectation of privacy in Internet postings or e-mails that have reached their recipients has been addressed by the Second Circuit, which has held that individuals may not enjoy such an expectation of privacy (see United States v Lifshitz, 369 F3d 173, 190 [2004]):
“ ‘Users would logically lack a legitimate expectation of privacy in the materials intended for publication or public posting. They would lose a legitimate expectation of privacy in an e-mail that had already reached its recipient; at this moment, the e-mailer would be analogous to a letter-writer, whose expectation of privacy ordinarily terminates upon delivery of the letter.’ ” (Quoting Guest v Leis, 255 F3d 325, 333 [6th Cir 2001].)
Likewise, whether one has a reasonable expectation of privacy in e-mails and other writings that have been shared with others, including entries on Facebook and MySpace, has been addressed by the United States District Court of New Jersey, which ordered such entries produced in Beye v Horizon Blue Cross Blue Shield of N.J. (Civ Case No. 06-5337 [D NJ, Dec. 14, 2007]). In this regard, the court stated that “[t]he privacy concerns are far less where the beneficiary herself chose to disclose the information.” As to the entries which had not been shared with others, they were to be preserved. At issue in Beye were on-line journals and diary entries of minor children who had been denied health care benefits for their eating disorders (see also Moreno v Hanford Sentinel, Inc., 172 Cal App 4th 1125, 91 Cal Rptr 3d 858 [Ct App, 5th Dist 2009] [no person would have reasonable expectation of privacy where that person took affirmative act of posting own writing on MySpace, making it available to anyone with a computer and opening it up to the public eye]; Dexter v Dexter, 2007 WL 1532084, 2007 Ohio App LEXIS 2388 [Ct App, 11th Dist, Portage County 2007] [no reasonable expectation of privacy regarding MySpace writings open to public view]).
*434 Indeed, as neither Facebook nor MySpace guarantee complete privacy, plaintiff has no legitimate reasonable expectation of privacy. In this regard, MySpace warns users not to forget that their profiles and MySpace forums are public spaces,[7] and Facebook’s privacy policy set forth, inter alia, that “[y]ou post User Content ... on the Site at your own risk. Although we allow you to set privacy options that limit access to your pages, please be aware that no security measures are perfect or impenetrable.”
Further that
“[w]hen you use Facebook, certain information you post or share with third parties (e.g., a friend or someone in your network), such as personal information, comments, messages, photos, videos . . . may be shared with others in accordance with the privacy settings you select. All such sharing of information is done at your own risk. Please keep in mind that if you disclose personal information in your profile or when posting comments, messages, photos, videos, Marketplace listing or other items, this information may become publicly available.”[8]
Thus, when plaintiff created her Facebook and MySpace accounts, she consented to the fact that her personal information would be shared with others, notwithstanding her privacy settings. Indeed, that is the very nature and purpose of these social networking sites, else they would cease to exist. Since plaintiff knew that her information may become publicly available, she cannot now claim that she had a reasonable expectation of privacy. As recently set forth by commentators regarding privacy and social networking sites: given the millions of users, “[i]n this environment, privacy is no longer grounded in reasonable expectations, but rather in some theoretical protocol better known as wishful thinking.”[9]
Further, defendant’s need for access to the information outweighs any privacy concerns that may be voiced by plaintiff. Defendant has attempted to obtain the sought-after information *435 via other means: e.g., via deposition and notice for discovery; however, these have proven to be inadequate since counsel has thwarted defendant’s attempt to question plaintiff in this regard or to obtain authorizations from plaintiff for the release of this information. The materials, including photographs, contained on these sites may be relevant to the issue of damages and may disprove plaintiffs claims. Without access to these sites, defendant will be at a distinct disadvantage in defending this action.
Ordered, that defendant Steelcase’s motion for an order granting said defendant access to plaintiffs current and historical Facebook and MySpace pages and accounts, including all deleted pages and related information, is hereby granted in all respects; and it is further ordered, that, within 30 days from the date of service of a copy of this order, as directed herein below, plaintiff shall deliver to counsel for defendant Steelcase a properly executed consent and authorization as may be required by the operators of Facebook and MySpace, permitting said defendant to gain access to plaintiffs Facebook and MySpace records, including any records previously deleted or archived by said operators.

. Facebook Principles, http:www.facebook.com/policy.php (last visited Apr. 3, 2009).

. About Us, MySpace.com/index.dfm?fuseaction=misc.aboutus (last visited June 16, 2009).

. MySpace Safety Highlights, http://www.myspace.com/index.cfm7frse action=cms.viewpage & placement=safety (last visited June 18, 2009).

. Facebook, MySpace and Meetup.com.

. See Charles Foster, Uncovering the Truth: Social Networks are a Treasure Trove of Information, Claims Canada, Oct./Nov. 2008, http://www. claimscanada.ca/issues/article.aspx?aid=1000224989 (last viewed June 18, 2009).

. In New York, there is no common-law right to privacy. (See Ava v NYP Holdings, Inc., 20 Misc 3d 1108[A], 2008 NY Slip Op 51281[U] [Sup Ct, NY County 2008].)

. MySpace General Tips, http://www.myspace.com/index.cfm?frseaction= cms.veiwpage & placement=safety_pagetips (last visited June 18, 2009).

. Facebook Principles, effective as of November 26, 2008, http:// www.facebook.com/policy.php (last viewed June 18, 2009).

. Dana L. Fleming and Joseph M. Herlihy, What Happens When the College Rumor Mill Goes Online?, Privacy, Defamation and Online Social Networking Sites, 53 Boston BJ [No. 1] 16 (Jan./Feb. 2009).