*459 OPINION OF THE COURT
Paul I. Marx, J.
Upon the papers read on defendants’ motion pursuant to CPLR 3124 to compel plaintiff to provide outstanding discovery-demanded by defendants, it is ordered that the motion to compel is denied in part and granted in part.
This personal injury action arises out of a motor vehicle accident which occurred in Montgomery, New York on March 13, 2009. Plaintiff alleged in her bill of particulars that she suffered various injuries, including physical injury and “mild traumatic brain injury,” “blunt facial and head trauma,” “persistent ecchymosis in the forehead,” “impaired cognitive functioning,” “cerebral dysfunction,” “motor organization deficit,” “memory impairments” and “difficulty concentrating.”
Defendants served plaintiff with a notice to produce, demanding the following: (1) a copy of a film in which plaintiff appeared; (2) a videotape of a beauty pageant in which plaintiff participated; (3) authorization for access to plaintiffs Facebook page; (4) photographs of plaintiff at her junior prom; (5) photographs of plaintiff at her boyfriend/fiancé’s senior prom; (6) all reviews that mention plaintiff as a performer; (7) the playbill for the production “Brighton Beach Memoirs” in which plaintiff performed one of the acting roles; (8) the name, date and location of the beauty pageant in which the plaintiff last appeared; (9) the name and address of the director of “Brighton Beach Memoirs”; and (10) authorization for access to plaintiffs employment records. Plaintiff objected to these demands and the instant motion followed.
In their motion papers, defendants narrow the scope of their request Nos. 4 and 5 to only those photographs that are representative of plaintiff s appearance at the two proms. Defendants withdraw request No. 9.
In her opposition papers, plaintiff provides responses to request Nos. 1, 2, 6, 7, 8, 9, and 10. With regard to request Nos. 1 and 2, plaintiff asserts that she does not have possession or control of the film in which she appeared, and she does not believe that a videotape was made of the beauty pageant. With regard to reviews of her performance sought in request No. 6, plaintiff states that she is not aware that any exist. Plaintiff attaches a copy of the playbill for “Brighton Beach Memoirs” in response to request Nos. 7 and 9 (which was withdrawn). In response to request No. 8, plaintiff provides the information that *460 she is able to recall. Finally, with regard to request No. 10, plaintiff asserts that she already provided defendants with the authorization for her employment records.
In their reply papers, defendants do not address plaintiffs responses to the above requests, focusing instead on request No. 3, which seeks the Facebook authorization. The court interprets defendants’ lack of specific objection to any of plaintiffs responses to request Nos. 1, 2, and 6 through 10 as a further narrowing of the scope of the parties’ dispute to only request No. 3 for the Facebook authorization and request Nos. 4 and 5 for the prom photographs. Therefore, the court will address only request Nos. 3 through 5 in this decision.
Facebook Authorization
Defendants request authorization to access plaintiffs Face-book page for the purpose of discovering what it reveals about plaintiffs “ability to portray cognitive function.” (See notice of motion, affirmation of Betsy N. Garrison 1111.) Defendants further clarify their request as follows:
“the layout of her Facebook page would demonstrate cognitive function inasmuch as the layout of a Face-book page calls for creativity of some sort as well as thought in providing captions for photographs, narrative posts written by the plaintiff as well as her ability to write and comment. Writings on the page would be direct and circumstantial evidence of her claims. Moreover, lucid and logical writing or a lack thereof, would be useful in the defense and/or assessment of this case.” (Id.)
Defendants attempt to refine the purpose of their request even further in their reply papers, contending that the manner in which plaintiff uses her Facebook page, including photo layouts and captions, expressiveness of language and lucidity of her statements will illuminate the nature and extent of her claimed neurological and psychological injury.
Plaintiff strenuously opposes access to her Facebook page and asserts that defendants have not demonstrated any factual predicate for their request to have “unfettered access” to her personal information. Moreover, plaintiff contends it is unreasonable to use the contents of her Facebook page as an indicator of her cognitive functioning. She asserts that her cognitive functioning is far more credibly represented by her high school and college transcripts, which have already been provided to *461 defendants. To the extent that her Facebook page contains photographs of her at the prom, performing in a play, or participating in a beauty pageant and postings related to any of those events, such information is cumulative and unnecessary given her admission that she participated in all of these events.
The court finds that there is a dearth of case law in this emerging area regarding discovery of electronic and digital information. In fact, at least one court, in its quest for guidance, went so far as to consult Canadian law. (See Romano v Steelcase Inc., 30 Misc 3d 426, 431 [Sup Ct, Suffolk County 2010].) Discovery in this area is nonetheless governed by the same legal principles that guide more traditional forms of discovery and, as one court put it, “digital ‘fishing expeditions’ are no less objectionable than their analog antecedents.” (Caraballo v City of New York, 2011 NY Slip Op 30605[U], *5 [Sup Ct, Richmond County 2011].) The party demanding access to social networking accounts must show that the method of discovery will lead to “the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims.” (See Abrams v Pecile, 83 AD3d 527, 528 [1st Dept 2011] [internal quotation marks and citations omitted].) The requesting party must “establish a factual predicate with respect to the relevancy of the evidence.” (McCann v Harleysville Ins. Co. of N.Y., 78 AD3d 1524, 1525 [4th Dept 2010].)
The court is troubled by the breadth of defendants’ request for authorization for plaintiffs Facebook page because it seeks unrestricted access. While the court recognizes defendants’ attempt to establish a factual predicate for their request, the fact is that every bit of information plaintiff enters onto her Face-book page demonstrates some level of cognitive functioning. This court’s review of reported decisions in this area has not disclosed any instance where such unfettered access was allowed, unless the requesting party first showed that information on the other party’s public page contradicted their claims of injury or damages. (See Romano v Steelcase, 30 Misc 3d at 430 [“In light of the fact that the public portions of plaintiffs social networking sites contain material that is contrary to her claims and deposition testimony, there is a reasonable likelihood that the private portions of her sites may contain further evidence such as information with regard to her activities and enjoyment of life, all of which are material and relevant to the defense of this action”].) Defendants have not made that contention here. They hope to discover such information in their *462 search. Defendants cannot point to anything concrete. Instead, they hope to divine the extent of plaintiffs cognitive injuries from reading every bit of information on her Facebook page.
The court finds that defendants’ request for unrestricted access to plaintiffs Facebook page is overbroad. (See Kregg v Maldonado, 98 AD3d 1289 [4th Dept 2012]; Patterson v Turner Constr. Co., 88 AD3d 617 [1st Dept 2011]; McCann v Harleysville Ins. Co. of N.Y., 78 AD3d 1524 [2010]; Caraballo v City of New York, 2011 NY Slip Op 30605[U] [2011]; Matter of Progressive Ins. Co. v Herschberg, 2011 NY Slip Op 31288[U] [Sup Ct, Queens County 2011].) In addition to the cases cited, the court finds persuasive the reasoning of a federal case addressing the same issue of access to a Facebook account in a somewhat analogous situation where the party’s claims involved damage to her mental and emotional health. (See Equal Empl. Opportunity Commn. v Simply Stor. Mgt., LLC, 270 FRD 430 [SD Ind 2010].) As the court there stated, “[although . . . the contours of social communications relevant to a claimant’s mental and emotional health are difficult to define, that does not mean that everything must be disclosed.” (Id. at 434.) While “anything that a person says or does might in some theoretical sense be reflective of her emotional state,” it does not justify “requiring the production of every thought she may have reduced to writing or, indeed, the deposition of everyone she may have talked to.” (Id. at 435, quoting Rozell v Ross-Holst, 2006 WL 163143, *3-4, 2006 US Dist LEXIS 2277, *11 [SD NY, Jan. 20, 2006, No. 05 Civ 2936(JGK)JCF].) Similarly, “the contours of social communications relevant to” plaintiffs cognitive functioning are hard to define but do not justify the blanket disclosure that defendants request. “[I]t must be the substance of the communication that determines relevance.” (Id. at 435.)
For example, if plaintiff posted a message on Facebook saying that she has difficulty formulating the words to express her thoughts, the substance of the message is what should be considered to determine whether the message is relevant. Beyond that, once plaintiff formulates a message, the message itself may not reflect the effort expended in its formulation if the substance of the message does not contain any reference to that process. Even plaintiffs use of language and her ideas may be more reflective of her choice of expression rather than her ability. Furthermore, as plaintiff contends, to the extent that she has provided more reliable indicators of her cognitive abilities, defendants have made no showing that their request is not cumulative.
*463 Accordingly, the court denies that portion of defendants’ motion to compel access to plaintiffs Facebook page, without prejudice to service of a more narrowly-tailored discovery demand.
Prom Photographs — Requests Nos. 4 and 5
Defendants seek to compel plaintiff to comply with their requests to produce photographs of her at her junior prom and her boyfriend/fiancé’s senior prom. They have amended their demand to seek only “representative photographs of her appearance” at those events. (See notice of motion, affirmation 1112.) Plaintiff objects on the ground that the photographs are irrelevant and their probative value is far outweighed by their prejudicial effect.
“Pursuant to CPLR 3101, there shall be full disclosure of all nonprivileged matter which is material and necessary to the defense or prosecution of an action.” (Romano v Steelcase, 30 Misc 3d at 427.) Plaintiffs contention goes more to the admissibility of the photographs at trial than to whether they are discoverable. “It is immaterial that the information sought may not be admissible at trial as pretrial discovery extends not only to proof that is admissible but also to matters that may lead to the disclosure of admissible proof.” (Id. at 428 [internal quotation marks and citations omitted].) Plaintiff also has put her physical condition in issue; therefore, photographs of her following the accident are relevant.
Accordingly, it is ordered that defendants’ motion to compel responses to request Nos. 1, 2, 6, 7, 8, 9 and 10 is denied as moot because plaintiff provided responses to those requests in her opposition papers; it is further ordered that defendants’ motion to compel a response to request No. 3 is denied as over-broad, without prejudice to serving a more narrowly-tailored request; and it is further ordered that defendants’ motion to compel responses to request Nos. 4 and 5 is granted.