**Brogan v. Rosenn, Jenkins & Greenwald, LLP**

554

C.P. of Lawrence County, No. 11250 of 2010, C.A..

*Michael J. Kenny, for plaintiffs*

*James J. Wilson,* for defendants Rosenn, Jenkins & Greenwald, LLP and David F. Chuff

*David R. Cherundolo,* for defendants SBP Abstracting and Anthony J. Popeck Stephen G. Bresset, for defendant Conestoga Title Insurance Co.

NEALON, *J.,* April 22, 2013—

## MEMORANDUM AND ORDER

Plaintiffs' discovery motion, which seeks to compel a deponent to produce her Facebook username and

password, presents a social media discovery issue of first impression in Lackawanna County. To obtain discovery of private information contained on social networking sites, a party must, at a minimum, demonstrate that the information sought is relevant, and the requestor may establish the requisite relevancy by showing that publicly accessible information published by the user on the social networking account arguably controverts the account holder's claims or defenses in the underlying action. In addition, social media discovery requests must be properly framed with reasonable particularity so that only relevant and non-privileged information is sought and produced. Since plaintiffs have not established the relevance of the deponent's private Facebook information, and their demand for her username and password is overly intrusive and would cause unreasonable embarrassment and burden for her, their motion to compel will be denied.

## I. FACTUAL BACKGROUND

Plaintiffs, Thomas Brogan and Wendy Brogan ("the Brogans"), commenced this civil action against their former counsel, defendants David F. Chuff, Esquire ("Chuff"), and Rosenn, Jenkins & Greenwald, LLP ("Rosenn"), title searcher, defendant Anthony J. Popeck t/a SBP Abstracting ("Popeck"), and title insurer, defendant Conestoga Title Insurance Company ("Conestoga"), after the Brogans purchased a property which, allegedly unbeknownst to them, was encumbered by a utility easement for a 42" water main passing through the property. (Docket entry no. 11 at ¶¶ 18, 20-23, 36). The Brograns contend that Pennsylvania Gas & Water Company ("PG&W") holds a duly recorded

easement prohibiting any structures within thirty (30) feet of the easement, as a result of which they allegedly must construct their sewer and water lines at least eight feet beneath the PG&W water main. (*Id.* at ¶¶ 44, 46-47, 49). The Brogans assert that Chuff, Rosenn and Popeck negligently failed to discover the recorded easement, and in their complaint, the Brogans advance causes of action for legal malpractice by Chuff and Rosenn, (*Id.* at ¶¶ 68-83, 88-98), negligent supervision by Rosenn, (*Id.* at ¶¶ 84-87), negligence by Popeck, (*Id.* at ¶¶99-105), and breach of contract, bad faith liability and negligent misrepresentation by Conestoga. (*Id.* at ¶¶ 106-135).

Chuff and Rosenn maintain that they hired and relied upon Popeck to search the title, and may not be held liable for that independent contractor's alleged failure to discover the easement. (Docket entry no. 46 at ¶¶ 1-5). Popeck avers that he discovered the existence of "an easement situation" and advised Chuff and Rosenn of the same, and that the Brogans had "actual knowledge of the easement/right-of-way and contrary to the advice given by Chuff and Rosenn,...decided to close the property transaction anyway." (Docket entry no. 62 at ¶¶23, 104). Conestoga admits that a title insurance policy was issued in conjunction with the purchase of the property, but denies that the Brogans' title defect claim is covered by the terms of the policy. (Docket entry no. 69 at ¶¶108-124).

Despite the relatively straightforward and uncompli-cated nature of the claims and defenses at issue, this litigation has been mired in perpetual discovery disputes which have generated an inordinate number of filings

that have unduly taxed the available judicial resources of Lackawanna County. Under Local Rule 4000.1, all discovery motions must initially be presented to and decided by the court-appointed special trial master who entertains discovery motions every Monday and Thursday. See Lacka. Co. R.C.P. 4000.1(a), (c). The special trial master's discovery ruling may be appealed de novo to the court of common pleas pursuant to Lacka. Co. R.C.P. 4000.1(b), upon the filing of a timely discovery appeal and the payment of an appeal fee of $120.50. See *Fratzola v. Klepadlo*, 26 Pa. D. & C. 5th 533 (Lacka. Co. 2012).

Virtually all discovery disputes in Lackawanna County are resolved by the special trial master without the subsequent filing of a de novo appeal. In 2011, 3,837 new civil cases were filed in Lackawanna County, but only twenty-eight (28) de novo discovery appeals were filed under Lacka. Co. R.C.P. 4000.1(b). (See Lackawanna County Court of Common Pleas 2011 Case Load Statistics Report to Administrative Office of Pennsylvania Courts, at p. 3 (Oct. 19, 2012)). However, of those twenty-eight (28) de novo discovery appeals in 2011, ten (10) were filed by the Brogans and one (1) was filed by Conestoga.[1] (Docket entry nos. 84, 100, 103, 104, 108, 124, 125, 135, 138, 151, 153). Thus, almost 40% of the Lackawanna County de novo discovery appeals in 2011 involved this single case.

Due to the excessive number of discovery appeals, Chuff and Rosenn sought exceptional relief from the President Judge of Lackawanna County by presenting a "Motion

_____
1. Conestoga had filed a second de novo discovery appeal on February 23, 2011, but later withdrew that appeal on April 8, 2011(Docket entry nos. 88, 94).

for Assignment of Judge for Discovery Proceedings." (Docket entry no. 156). Chuff and Rosenn averred that although "[t]his is a fairly straightforward case that does not require anywhere near the discovery, particularly the discovery motion practice and appeals, pursued by [the Brogans]," the parties have become "embroiled in seemingly endless discovery battles." (*Id.* at ¶¶5, 11). Chuff and Rosenn posited that if the President Judge "assigned one judge to hear all discovery proceedings, it would eliminate the numerous appeals which have greatly slowed the resolution of this case." (*Id.* at ¶13).

By order dated January 13, 2012, President Judge Thomas J. Munley appointed the undersigned "to hear and rule upon all motions and matters relating to discovery" in this case. (Docket entry no. 156 at p. 1). Since that time, the Brogans have filed twenty-four (24) additional discovery motions, (Docket entry nos. 166-167, 183, 187-188, 190-193, 195, 197-205, 211, 214, 217), and Popeck and Conestoga have each filed motions for protective Orders to prohibit certain discovery being sought by the Brogans. (Docket entry nos. 194, 218). The Brogans' discovery motions have included such unsuccessful requests as the Brogans' motion to compel Chuff to provide an interrogatory answer which he had already attested that he did not know, (Docket entry no. 166), their motion to compel a witness to appear for a deposition on a scheduled date even though the deponent's physician had stated in writing that "it would not be in his best medical interest" to do so on that exact date, (Docket entry no. 187), and their motion to compel Conestoga to produce former employees for depositions at Conestoga's own expense. (Docket entry no. 167). To date, the undersigned has been

required to issue eleven (11) separate discovery rulings disposing of more than two dozen discovery motions and sanctions requests. (Docket entry nos. 160, 163-164, 169, 184, 196,212,232-235).

The Brogans' latest discovery motion concerns their demand for the Facebook log-in name, username and password for a paralegal in Conestoga's claims department. On December 4, 2012, the Brogans deposed Conestoga's former Director of Claims & Recovery, Gregory L. Amand ("Amand"), who testified that he communicated via Facebook with a Conestoga paralegal, Rebecca Brown Breault ("Breault"), regarding his deposition subpoena. Amand indicated that he and Breault exchanged brief, private messages on Facebook in which Breault suggested that Amand contact Conestoga's counsel in advance of his deposition to discuss the Brogans' title insurance claim which had been denied by Conestoga. (Deposition of Greg Amand dated 12/4/12 at pp. 33-34, 36-37). Amand testified that he never contacted Conestoga's counsel prior to his deposition. (*Id.* at p. 36).

Breault was deposed by the Brogans' counsel on the following day, December 5, 2012, at which time she was asked to identify the current and former employees of Conestoga who were her "friends" on Facebook at that time.[2] (Deposition of Rebecca Breault dated 12/5/12

---

2. The social networking site "Facebook" enables account holders to designate their "friends" by inviting another user to become a member's "friend." The recipient is free to accept or reject the "friend" request. See *State v. Altajir,* 303 Conn. 304, 306 n. 1, 33 A.3d 193, 196 n. 1 (2012). The Facebook user controls the degree of access that a "friend" may have to the user's posts, photographs or other information. Leonard & Hendry, *From Peoria to Peru: NLRB Doctrine in a Social Media World,* 63 Syracuse L. Rev. 199,202 (2013) (citing Facebook Help

at p. 34). Breault did not identify Amand as one of the ex-employees of Conestoga who was her "friend" on Facebook. (*Id.* at pp. 34-35). However, Breault was never "asked during her deposition whether she had ever communicated or corresponded with Amand [on Facebook] regarding the subpoena he received." (Transcript of proceedings ("T.P.") on 3/26/13 at pp. 32-33).

Conestoga has produced the four brief Facebook messages that were exchanged by Breault and Amand relative to his deposition subpoena, but has rejected the Brogans' demand for Breault's Facebook username and password. (Docket entry no. 236). The Brogans have filed a "Motion to Compel Conestoga to Provide to Plaintiffs Conestoga Employee Rebecca Breault's Facebook Log-In Name(s) and Username(s) and Password(s)." (Docket entry no. 191). The crux of the Brogans' relevancy argument is that the depositions of Breault and Amand are irreconcilably inconsistent in that Amand testified that they exchanged private messages on Facebook, whereas Breault did not identify Amand as a Facebook "friend." (T.P. 3/26/13 at pp. 33-34). Conestoga submits that the Brogans are not entitled to Breault's private Facebook

Center, http://www.facebook.com/help/). "Facebook users may decide to keep their profiles completely private, share them only with 'friends' or more expansively with 'friends of friends,' or disseminate them to the public at large." *U.S. v. Meregildo,* 883 F.Supp.2d 523, 525 (S.D.N.Y. 2012) (citing Facebook Help Center, http://www.facebook.com/help/privacy). *See also Sluss v. Com.,* 381 S.W.3d 215, 227 n. 12 (Ken. 2012) ("Depending on what privacy settings a user has, some information may be entirely concealed, such as with whom that user is 'friends.'"). Facebook recently renamed its setting permitting disclosure to any viewer from "Everyone" to "Public," thereby advising account holders "that the setting allows public viewing beyond Facebook users." *Haynes, Virtual Blinds: Finding Online Privacy in Offline Precedents,* 14 Vand. J. Ent. & Tech. L. 603, 642 (Spring 2012) (citing *Statement of Rights and Responsibilities,* Facebook, http://www.facebook.com/terms.php).

username and password, and argues that the Brogans' discovery request for that information is "yet another 'fishing expedition'." (Docket entry no. 226 at p. 5). Following the completion of oral argument on March 26, 2013, the Brogans' discovery motion was submitted for a decision.

## II. DISCUSSION

### (A) STANDARD OF REVIEW

"The trial court is responsible for overseeing discovery between the parties and therefore it is within that court's discretion to determine the appropriate measures to insure adequate and prompt discovery of matters allowed by the Rules of Civil Procedure." *Rohm and Haas Company v. Lin.* 992 A.2d 132, 143 (Pa. Super. 2010), *cert. denied,* 132 S.Ct. 852 (U.S. 2011). Under Pa.R.C.P. 4003.1, "discovery is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried." *Berg v. Nationwide Mutual Insurance Company, Inc.,* 44 A.3d 1164, 1178 n. 8 (Pa. Super. 2012); *Ferguson v. Ghigiarelli,* 2012 WL 5376702, at * 3 (Lacka. Co. 2012). Information is relevant "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Smith v. Morrison,* 42 A.3d 131, 137 (Pa. Super. 2012), *app. denied,* 57 A.3d 71 (Pa. 2012); *Scranton Laminated Label, Inc. v. Florimonte,* 2013 WL 1345805, at *8 (Lacka. Co. 2013).

The relevancy standard applicable to discovery is necessarily broader than the standard used at trial for the admission of evidence. *Com. v. TAP Pharmaceutical*

*Products, Inc.*, 904 A.2d 986, 994 (Pa. Cmwlth. 2006); *George v. Schirra*, 814, A.2d 202, 205 (Pa. Super. 2002). The party objecting to discovery generally bears the burden of establishing that the requested information is not relevant or discoverable. *Koken v. One Beacon Insurance Company*, 911 A.2d 1021, 1025 (Pa. Cmwlth. 2006); *Yadouga v. Cruciani*, 66 Pa. D. & C. 4th 164, 168 (Lacka. Co. 2004). Any doubts regarding relevancy are to be resolved in favor of discovery. *Ario v. Deloitte & Touche, LLP*, 934 A.2d 1290, 1293 (Pa. Cmwlth. 2007); *Koken*, supra; *Yadouga*, supra.

### (B) SOCIAL NETWORKING SITE DISCOVERY

In support of their attempt to secure Breault's Facebook username and password, the Brogans assert that Amand "admitted that he and Breault discussed the Brogan matter on Facebook," which the Brogans characterize as "[a]n assertion Breault evades by not naming him as a 'friend' during her deposition." (Docket entry no. 208 at p. 2). The Brogans contend that "Breault's contradiction of Amand's admission calls into question the veracity of her testimony," and submit that "[i]f she provided false testimony in this regard, she may have also hidden the extent of her Conestoga-related contacts on Facebook and their communications." (*Id.* at pp. 2-3). Based upon this reasoning, the Brogans argue that they have established "a threshold showing of relevance" for their discovery since "Breault's potential untruthfulness concerning Amand could lead to the discovery of additional Facebook friends she declined to mention and conversations held about the Brogans' claim." (*Id.* at p. 5).

Citing *Koken* and its directive that "a court can

prohibit the discovery of matters which...would amount to a 'fishing expedition,'" *Koken*, 911 A.2d at 1025, Conestoga opposes the Brogans' requested discovery on that basis. (Docket entry no. 226 at p. 5). Additionally, Conestoga broadly objects to the request for Facebook discovery on the ground that it seeks information that is protected from discovery by a general right of privacy. (*Id.* at p.4 ("Rebecca Breault is not and never has been at a management level of [Conestoga] and has not lost her privacy rights merely because her employer is a party to litigation.")). To date, no Pennsylvania appellate court has addressed the discovery of private information contained on Facebook and other social networking sites. Nor has a Lackawanna County judge had occasion to consider this social media discovery issue in civil litigation.

Several Pennsylvania trial courts have considered litigants' discovery efforts to gain access to non-public information contained on a party's social networking account.[3] Those decisions generally recognize that a party seeking discovery of private social media information must demonstrate a threshold showing of relevance by articulating some facts, gleaned from the publicly accessible portions of the user's social networking account, which suggest that pertinent information may be contained on the non-public portions of the member's account. *See Hoy v. Holmes*, 107 Schuylkill L. Rev. 19, 23 (2013) ("We agree that a factual predicate has to be shown

---

3. A comprehensive chronology of Pennsylvania trial court orders and opinions addressing this issue can be found on the website, Torttalk, at http://www.tortTalk.com/2012/01/facebook-discovery-scorecard. html, and the Social Media Law Center's list that has been published by *The Legal Intelligencer* at http://www.law.com/jsp/pa/PubArticlePA. jsp?hubtype=main_PAGE&id=1202594569711.

by the party seeking discovery for non-public information posted on social media. Such a factual predicate has not been identified in the present motion to compel. The mere allegation that a lawsuit has been commenced against the defendant and that the plaintiffs are claiming certain damages does not identify nor establish such a factual predicate."); *Simms v. Lewis*, 2012 WL 6755098, at *2 (Indiana Co. 2012) (noting that the plaintiff claiming permanent injuries had referenced attendance at a Zumba Fitness class, reasoning that "[a]ttending a fitness class is relevant, as it directly relates to plaintiff's claim that she has suffered a severe injury," and holding that "[b]ased upon the information contained in a post visible on her public page, it is reasonable to infer that the non-public portion of plaintiff's account may contain additional relevant evidence."); *Trail v. Lesko*, 2012 WL 2864004, at *7 (Alleg. Co. 2012) ("The courts [of common pleas] recognize the need for a threshold showing of relevance prior to discovery of any kind, and have nearly all required a party seeking discovery in these cases to articulate some facts that suggest relevant information may be contained within the non-public portions of the profile [footnote omitted]. To this end, the courts have relied on information contained in the publicly available portions of a user's profile to form a basis for further discovery."); *Arcq v. Fields,* No. 2008-2430, Herman, P. J., at p. 3 (Franklin Co. 2011) ("While it is not an absolute necessity that a plaintiff have a public profile before a defendant can be given access to the private portion, it is necessary that the defendant have *some* good faith belief that the private profile may contain information. Here, Defendant had

no reason to believe so, therefore, the Motion to Compel will be denied."); *Largent v. Reed*, 2011 WL 5632688, at * 5 (Franklin Co. 2011) (granting defense request to compel plaintiff to divulge her Facebook username and password since she had claimed damages for "permanent physical and mental injuries" and the public portion of her "Facebook account included status updates about exercising at a gym and photographs depicting her with her family that undermine her claim for damages."); *Zimmerman v. Weis Markets, Inc.*, 2011 WL 2065410, at * 4 (Northumberland Co. 2011) (compelling plaintiff to provide social media usernames and passwords since "[b]ased on a review of the publicly accessible portions of his Facebook and MySpace accounts, there is a reasonable likelihood of additional relevant and material information on the non-public portions of these sites."); *McMillen v. Hummingbird Speedway, Inc.*, 2010 WL 4403285, at * 4 (Jefferson Co. 2010) ("McMillan has alleged significant and substantial injuries, some which he claims may be permanent. Accessing only the public portions of his Facebook page, however, the defendants have discovered posts they contend show that McMillan has exaggerated his injuries. Certainly a lack of injury and inability is relevant to their defense, and it is reasonable to assume that McMillan may have made additional observations about his travels and activities in private posts not currently available to the defendants."). Two additional trial court orders have granted requests for discovery of social media information, albeit without expressly indicating whether they applied a threshold relevancy test based upon information that the users had disclosed on the publicly

viewable portions of their profiles. *See Mazzarella v. Mount Airy #1, LLC,* No. 1798 CV 2009, Williamson, J. (Monroe Co. Nov. 7, 2012); *Gallagher v. Urbanovich,* No. 2010-33418, Carpenter, J. (Montg. Co. Feb. 27, 2012).

Those Pennsylvania trial court rulings, which have considered social media users' assertions that social networking information is protected from discovery based upon the users' right of privacy or some recognized privilege, have uniformally rejected that argument. *See Hoy,* 107 Schuylkill L. R. at 23 ("There exists no constitutional right of privacy that prohibits the type of discovery sought concerning social media nor is such social media protected by an established privilege."); *Mazzarella, supra* ("Furthermore, plaintiff's argument of an expectation of privacy regarding her use of social media is misplaced. Those who elect to use social media, and place things on the internet for viewing, sharing and use with others, waive an expectation of privacy."); *Simms, supra,* at *2 ("By definition, the purpose of social networking sites is to share information. The court finds that Plaintiff cannot maintain a reasonable expectation of privacy when she created the account and voluntarily posted this information, knowing that the information could become publicly available."); *Largent, supra,* at *5 ("Almost all information on Facebook is shared with third parties, and there is no reasonable privacy expectation in such information."); *Zimmerman, supra,* at *4 ("In view of the sound, logical approach of the court in *Romano v. Steelcase, Inc.,* 30 Misc.3d 426, 907 N.Y.S.2d 650 (Suffolk Co. 2010)], this court is likewise persuaded that

the argument of Zimmerman that his privacy interests outweigh the discovery requests is unavailing."); *McMillen, supra,* at * 3 ("When a user communicates through Facebook or MySpace, however, he or she understands and tacitly submits to the possibility that a third party recipient, i.e., one or more site operators, will also be receiving his or her messages and may further disclose them if the operator deems disclosure to be appropriate. That fact is wholly incommensurate with a claim of confidentiality."). Federal district courts have similarly declined to recognize a social media user's right of privacy or an established privilege which completely immunizes the account holder's private electronic information from discovery.[4] *See e.g. Potts v. Dollar Tree Stores, Inc.,* 2013 WL 1176504, at *3 (M.D. Tenn. 2013); *Howell v. Buckeye Ranch, Inc.,* 2012 WL 5265170, at *1 (S.D. Oh. 2012); *Davenport v. State Farm Mutual Automobile Insurance*

---

4. Some commentators have opined that if an online social network user employs a privacy setting, the courts should recognize the user's "reasonable expectations of privacy" and ensure that the online social network's representations "that the user can control how content and information she posts is shared through privacy and application settings...are more than empty words." Haynes, 14 Vand. J. Ent. & Tech. L. at 648. *See also Boyden, Oversharing: Facebook Discovery and The Unbearable Sameness of Internet Law,* 65 Ark. L. Rev. 39, 55-56 (2012) ("[I]t is also true that Facebook, MySpace, and other social-networking sites make no promise to keep one's posts, comments, and other materials confidential. But that does not mean there are not any privacy interests at stake at all. It is hardly the case that sharing information with a limited number of people removes all privacy interests from that information.... The burden on the plaintiff..., including the burden on the plaintiff's privacy and social relationships, must still be balanced against the need for the discovery even if the requested information is relevant."). But *see, Patterson v. Turner Construction Co.,* 88 A.D. 3d 617, 618, 931 N.Y.S. 2d 311, 312 (N.Y. App. Divis. 1st Dept. 2011) ("The postings on plaintiff's online Facebook account, if relevant, are not shielded from discovery merely because plaintiff used the service's privacy settings to restrict access.").

*Company*, 2012 WL 555759, at * 1 (M.D. Fla. 2012); *Tompkins v. Detroit Metropolitan Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012) ("I agree that material posted on a 'private' Facebook page, that is accessible to a selected group of recipients but not available for viewing by the general public, is generally not privileged, nor is it protected by common law or civil notions of privacy."). Not unlike the Pennsylvania trial court decisions, federal rulings have allowed discovery of private information contained on a social networking site based upon a threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence since the publicly available information on the site undermines the user's claims or defenses in litigation. *See Potts, supra*; ("The defendant lacks any evidentiary showing that plaintiff's public Facebook profile contains information that will reasonably lead to the discovery of admissible evidence."); *Keller v. National Farmers Union Property & Casualty Company*, 2013 WL 27731, at * 4 (D. Mont. 2013); ("But National Farmers Union has not come forward with any evidence that the content of either of the plaintiffs' public postings in any way undermines their claims in this case."); *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012); *Tompkins*, 278 F.R.D. at 388 ("If the plaintiff's public Facebook page contained pictures of her playing golfing or riding horseback, defendant might have a stronger argument for delving into the nonpublic section of her account. But based on what has been provided to this court, defendant has not made a sufficient predicate showing that the material it seeks is reasonably calculated to lead to the discovery of admissible evidence.").

*(1) Relevancy Requirement*

Although the digital era has spawned novel evidentiary and discovery questions, those issues have been analyzed and resolved based upon well-settled legal principles governing conventional forms of evidence and discovery. *See e.g. Com. v. Serge,* 586 Pa. 671, 685-686, 896 A.2d 1170, 1178-79 (2006) (like traditional demonstrative evidence, a computer-generated animation is admissible as a demonstrative exhibit under Pa.R.E. 401, 403 and 901 if it (1) is properly authenticated as a fair and accurate representation of the evidence it purports to portray, (2) is relevant, and (3) has a probative value that is not outweighed by the danger of unfair prejudice), *cert. denied,* 549 U.S. 920 (2006); *Com. v. Koch,* 39 A.3d 996, 1005 (Pa. Super. 2011) (holding that text messages on cellular telephone were inadmissible since they had not been properly authenticated under Pa.R.E. 901, and concluding "that authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person."), *app. granted,* 44 A.3d 1147 (Pa. 2012); *Brooks v. Frattaroli,* 2009 WL 7419028, at * 4 (Leb. Co. 2009) (granting protective order prohibiting discovery of "all metadata, all internet queries, all deleted files and all stored files" on party's computers, and finding that the electronic discovery request was "overly broad" and burdensome under Pa.R.C.P. 4011(b)). Under the Pennsylvania Rules of Civil Procedure, a party is not entitled to discovery unless the requestor first demonstrates that the information

or material sought is relevant or "reasonably calculated to lead to the discovery of admissible evidence." *See Cooper v. Schoffstall*, 588 Pa. 505, 522, 905 A.2d 482, 493 (2006) (citing Pa.R.C.P. 4003.1(b)); *Barrick v. Holy Spirit Hospital of Sisters of Christian Charity*, 32 A.3d 800, 809 (Pa. Super. 2011) (quoting Pa.R.C.P. 4003.1(b)), *app. granted*, 52 A.3d 221 (Pa. 2012). Consistent with that firmly established discovery maxim, a party may obtain discovery of private Facebook posts, photographs and communications only if the electronically stored information is relevant, and the party may satisfy that relevancy requirement by showing that publicly accessible information posted on the user's Facebook page controverts or challenges the user's claims or defenses in the pending litigation. To that extent, the resolution of social media discovery disputes pursuant to existing Rules of Procedure is simply new wine in an old bottle.

The Brogans have not established that Breault published information on the publicly viewable portion of her Facebook account which refutes or questions the veracity of her assertions in this case. The Brogans contend that they have satisfied the relevancy requirement since Amand's testimony that he exchanged Facebook messages with Breault is allegedly at variance with Breault's failure to identify Amand as a Facebook "friend" during her deposition. However, it is not necessary for Facebook users to be "friends" in order to exchange electronic messages on Facebook. (*Sending a Message*, Facebook Help Center, Facebook, http://www.facebook.com/help/

messages#!/help/326534794098501/(last visited April 18, 2013); *Settings & Security*, Facebook Help Center, Facebook, http://www.facebook.com/help/messages#!help/580504375298594/ (last visited April 18, 2013)). Hence, the Brogans' relevance argument is predicated upon the faulty premise that Amand and Breault could only exchange Facebook messages if they had accepted each other as Facebook "friends." The Brogans offer no other claim of relevance with respect to Breault's private Facebook information. Absent a showing of potential relevance, the Brogans are not entitled to their requested discovery of Breault's Facebook username and password.

### (2) Reasonable Particularity Requirement

Even if the Brogans had made the requisite relevancy showing in support of their request for access to Breault's Facebook account, their demand for discovery of Breault's username and password would be nonetheless denied as overly broad and unduly invasive. *See Feldman v. Ide,* 915 A.2d 1208, 1212 (Pa. Super. 207) (discovery request seeking disclosure of medical expert's forensic income information for last five year was overly broad). The Brogans do not request copies of Facebook messages concerning specific subjects during particular time periods. *See e.g., Anthony v. Atlantic Group, Inc.,* 2012 WL 4009490, at * 3 (D.S.C. 2012) (requiring plaintiffs "to produce social networking data ("SND"), electronically stored information ("ESI"), and electronic mail ("email") related to plaintiffs' residences or receipt of *per diem*," and

noting that "[t]he requests do not seek broad disclosure of any and all SND, ESI, and email, but instead, narrowly define the responsive information as only those portions of Plaintiffs' SND, ESI and email which directly relate to the issues raised in this case."); *Keller, supra*, at *3 (defendant sought printout of photographs posted by plaintiff during certain time period). Rather, the Brogans seek to compel Breault to provide them with her Facebook username and password so that the Brogans may have unbridled access to any and all information contained on Breault's Facebook account.

A party seeking the production of documents and things, or requesting the right to enter upon the property of a party or non-party, must describe the requested materials or the property to be entered "with reasonable particularity." *See* Pa.R.C.P. 4009.11 (request for production of documents and things must identify "the items to be produced either by individual item or by category, and describe each or category with reasonable particularity."); Pa.R.C.P. 4009.32 and 4009.33 (discovery requests to enter the property of a party or non-party must "describe with reasonable particularity the property to be entered and the activities to be performed."). In the context of social networking sites, a party "does not have a generalized right to rummage at will through information that [another party] has limited from public view." *Tompkins*, 278 F.R.D. at 388; *Potts, supra*, at *3; *Keller, supra*, at *4; *Mailhoit*, 285 F.R.D. at 570; *Davenport, supra*, at *2. "Otherwise, the [party] would be allowed to

engage in the proverbial fishing expedition, in the hope that there might be something of relevance in [the other party's] Facebook account." *Tompkins, supra* (emphasis in original); *Potts, supra; Keller, supra; Mailhoit,* 285 F.R.D. at 572; *Davenport, supra,* at \*1.

Although a few common pleas courts have required plaintiffs to provide the defense with their Facebook usernames and passwords based upon a threshold showing of relevance, *see, e.g., Largent, supra, Zimmerman, supra, McMillen, supra,* other federal district courts have deemed such requests too broad and lacking "reasonable particularity" under Fed. R. Civ. P. 34(b)(1)(A). *See Howell, supra.* at \* 1 ("Howell's username and password would gain defendants access to all the information in the private sections of her social media accounts - - relevant and irrelevant alike....Defendants are free to serve interrogatories and document requests that seek information from the accounts that is relevant to the claims and defenses in this lawsuit. Plaintiff's counsel can then access the private sections of Howell's social media accounts and provide the information and documents responsive to the discovery requests."); *Tompkins,* 278 F.R.D. at 389 ("Moreover, the request for the entire account, which may well contain voluminous personal material having nothing to do with this case, is overly broad."); *Holter v. Wells Fargo and Company,* 281 F.R.D. 340, 344 (D. Minn. 2011) ("Plaintiff will not be required to provide defendant with any passwords or usernames to any social websites, so that defendant can conduct its own search and review. Just as the court would

not give defendant the ability to come into plaintiff's home or peruse her computer to search for possible relevant information, the Court will not allow defendant to review social media content to determine what it deems is relevant."). Accord *Winchell v. Lopiccolo,* 38 Misc. 3d 458, 462, 954 N.Y.S.2d 421, 424 (Orange Co. 2012) (distinguishing *Romano v. Steelcase, Inc.,* supra, and holding that "[t]he court finds that defendants' request for unrestricted access to Plaintiff's Facebook page is overbroad."). Those courts have instead required more narrowly tailored discovery requests which do not constitute digital fishing expeditions. *See Potts, supra,* at *3 (directing the parties to "agree to a word search of Plaintiff's computer by an agreed neutral party to assess whether Plaintiff's computer contains relevant information."); *Mailhoit,* 285 F.R.D. at 572 (concluding that a request for "any pictures of Plaintiff taken during the relevant time period, and posted on Plaintiffs profile or tagged or otherwise linked to her profile, is impermissibly overbroad."); *Davenport, supra,* at *2 ("As the subject request for photographs seeks production of every photograph added to every [social networking site] SNS since the date of the subject accident, it is overly broad on its face and not reasonably calculated to lead to the discovery of admissible evidence."). In addition, some federal courts have conducted an *in camera* review of the social networking data to determine whether any information is subject to discovery, *see Offenback v. L. M. Bowman, Inc.,* 2011 WL 2491371, at * 2 (M.D. Pa. 2011), or have appointed special

electronic discovery masters to oversee electronic discovery and to establish protocols for electronic searches and assertions of privileges and objections. *See Bro-Tech Corp. v. Thermax, Inc.*, 2008 WL 5210346, at * 1-2 (E.D. Pa. 2008).

A discovery request seeking carte blanche access to private social networking information is overly intrusive, would cause unreasonable embarrassment and burden in contravention of Pa.R.C.P. 4011(b), and is not properly tailored "with reasonable particularity" as required by the Pennsylvania Rules of Civil Procedure. While a limited degree of "fishing" is to be expected with certain discovery requests, parties are not permitted "to fish with a net rather than with a hook or a harpoon." *Brownstein v. Philadelphia Transp. Co.*, 46 Pa. D. & C. 2d 463, 464 (Phila. Co. 1969). For example, the defense in personal injury litigation has the right to demand production of photographs portraying an allegedly disabled claimant engaging in unrestricted physical activity, but is not entitled to personally rifle through every photo album or electronic folder of digital photographs that the claimant possesses in the hope that the defense may discover a relevant photograph. If the Brogans obtain Breault's Facebook username and password, they would have an unrestricted license to peruse her entire Facebook account, and view highly sensitive information and potentially confidential communications that have no relevance to this lawsuit, including comments that were authored by third parties such as her Facebook "friends." Consequently, the Brogans' demand for production of Breault's Facebook

username and password is too broad and not the proper method by which to obtain social networking information in a civil case. As a result, the Brogans' motion seeking to compel a party, Conestoga, to provide an employee's Facebook log-in name, username and password will be denied.[5]

## ORDER

And now, April 22, 2013, upon consideration of plaintiffs' "motion to compel Conestoga [Title Insurance Company] to provide to plaintiffs Conestoga employee Rebecca Breault's Facebook log-in name(s) and username(s) and password(s)," the memoranda of law submitted by the parties, and the oral argument of counsel on March 26, 2013, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that plaintiffs' "motion to compel Conestoga to provide to plaintiffs Conestoga employee Rebecca Breault's Facebook log-in name(s) and username(s) and password(s)" is denied.

---

5. In light of the denial of the Brogans' discovery motion based upon Pa.R.C.P. 4003.1(a), 4009.11(b) and 4011 (b), it is unnecessary to address Conestoga's alternate objection regarding the propriety of compelling social media discovery from a non-party. *See Juror Number One v. Superior Court*, 206 Cal. App. 4th 854, 868,142 Cal. Rptr. 3d 151, 161-162 (Cal. Ct. App. 2012) (holding that trial court did not exceed its authority to investigate alleged juror misconduct by requiring juror, who admittedly posted comments on Facebook about evidence during trial and invited responsive comments by Facebook "friends," to execute a consent form authorizing Facebook to release juror's postings for *in camera* review by court), *rehearing denied*, 2012 WL 2393996 (Cal. Ct. App. June 15, 2012), *petition for review denied*, No. S203713 (Cal. Aug. 22, 2012).