# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Office of the Governor,            :
            Petitioner         :
                                  :
            v.                     :
                                  :
Lindsey Wanner and           :
The Fairness Center,          : No. 1453 C.D. 2019
            Respondents      : Argued: May 11, 2020

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: June 29, 2020

        The Office of the Governor (Governor's Office) petitions for review of the September 18, 2019 Final Determination of the Office of Open Records (OOR) granting in part and denying in part the appeal of Lindsey Wanner and The Fairness Center (collectively, Requesters) following the Governor's Office's denial of Requesters' request made pursuant to Pennsylvania's Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-3104 (RTKL). After review, we affirm OOR's Final Determination.

        On February 21, 2019, Requesters submitted a request pursuant to the RTKL for 13 categories of records pertaining to the Governor's Office's implementation of Executive Order 2015-05, which established certain policies, practices, and procedures for Home Care Service Programs administered by the

Pennsylvania Department of Human Services.[1]  *See* Final Determination at 2; *see also* Standard Right-to-Know Law Request Form dated February 21, 2019

---

[1] Specifically, the Request sought the following:

> 1. A copy of all communications, including emails or other forms of written correspondence, to and from any and all members of the Office of the Governor's Executive Staff ("Executive Staff") as listed on the administration's official webpage (www.governor.pa.gov), concerning the implementation of Executive Order 2015-05.
>
> 2. A copy of all communications, including emails or other forms of written correspondence, to and from all members of the Executive Staff, concerning or discussing direct care workers ("DCWs") and United Home Care Workers of Pennsylvania ("UHWP" or "UHCWP"), Service Employees International Union ("SEIU"), American Federation of State, County and Municipal Employees ("AFSCME"), and/or any affiliates of UHWP, SEIU, and/or AFSCME.
>
> 3. A copy of all communications, including emails or other forms of written correspondence, to and from any and all members of the Executive Staff, concerning or discussing the DCW representative.
>
> 4. A copy of all communications, including emails or other forms of written correspondence, to and from the Secretary and/or deputy secretaries of the Departments of Health, and/or Human Services, and/or Labor and Industry concerning the implementation of Executive Order 2015-05.
>
> 5. A copy of all communications, including emails or other forms of written correspondence, between the Office of the Governor, including any member of the Executive Staff, with any employees, staff, officers, directors, agents, representatives, or intermediaries for SEIU and/or any affiliates thereof.
>
> 6. A copy of all communications, including emails or other forms of written correspondence, between the Office of the Governor, including any member of the Executive Staff, with any employees, staff, officers, directors, agents, representatives, or intermediaries for AFSCME and/or any affiliates thereof.

7. A copy of all communications, including emails or other forms of written correspondence, between the Office of the Governor, including any member of the Executive Staff, with any employees, staff, officers, directors, agents, representatives, or intermediaries for UHWP and/or any affiliates thereof.

8. A copy of all draft proposals and/or draft agreements and/or memoranda of understanding concerning the organization, representation, and/or unionization of DCWs.

9. A copy of all records generated as a result of meetings between the Office of the Governor, including any member of the Executive Staff, with any employees, staff, officers, directors, agents, representatives, or intermediaries for SEIU and/or any affiliates thereof concerning the implementation of Executive Order 2015-05.

10. A copy of all records generated as a result of meetings between the Office of the Governor, including any member of the Executive Staff, with any employees, staff, officers, directors, agents, representatives, or intermediaries for AFSCME and/or any affiliates thereof concerning the implementation of Executive Order 2015-05.

11. A copy of all records generated as a result of meetings between the Office of the Governor, including any member of the Executive Staff, with any employees, staff, officers, directors, agents, representatives, or intermediaries for UHWP and/or any affiliates thereof concerning the implementation of Executive Order 2015-05.

12. A copy of all records generated as a result of meetings between the Secretaries and/or deputy secretaries of the Departments of Health, and/or Human Services, and/or Labor and Industry with any DCW representative concerning the implementation of Executive Order 2015-05.

13. A copy of all communications, including emails or other forms of written correspondence, to and from any member of the Executive Staff concerning the Pennsylvania Supreme Court's decision in *Markham v. Wolf* and/or *Smith v. Wolf*, reported at 190 A.3d 1175 (Pa. 2018).

Request, Reproduced Record (R.R.) at 8a-9a.

(Request), Reproduced Record (R.R.) at 7a-9a.  On April 1, 2019, the Governor's Office granted the Request in part and denied it in part.  *See* Final Determination at 2; *see also* Governor's Office's Reply to Request dated April 1, 2019 (Governor's Office's Reply), R.R. at 3a-15a.  To the extent the Governor's Office's Reply denied the Request, it cited the attorney-client privilege and the attorney-work product doctrine and also claimed exemptions based on the RTKL's predecisional deliberations exemption and on the basis that certain documents contained personal identifying information.  *See* Governor's Office's Reply to the OOR.

On April 9, 2019, Requesters appealed the Governor's Office's denial of the Request to the OOR.  *See* Final Determination at 2; Requesters' OOR Appeal dated April 9, 2019, R.R. at 1a-15a.  On April 29, 2019, the Governor's Office submitted a position statement and the affidavit of Marc Eisenstein, the Governor's Office's Open Records Officer, which explained the reasons that the Governor's Office declined to produce certain records requested by the Request (Eisenstein Affidavit).  *See* Final Determination at 2 & 6; *see also* Eisenstein Affidavit.  On April 29, 2019, Requesters also submitted a position statement that argued that the Governor's Office failed to meet its burden to prove that it appropriately withheld records.  *See* Final Determination at 2.  On May 31, 2019, the Governor's Office submitted to the OOR for *in camera* review[2] a Supplemental Certified Record under seal that contained the records previously withheld by the Governor's Office

_____

[2] On May 13, 2019, the OOR executed an order that required the Governor's Office to produce "for *in camera* inspection, unredacted copies of all records responsive to the Request that were withheld from disclosure to the OOR[.]"  OOR Order dated May 13, 2019, R.R. at 76a.  The Governor's Office accordingly produced documents that the OOR reviewed in formulating its Final Determination.  *See* Final Determination at 2.

4

(Supplemental Certified Record),[3] together with a detailed exemption log describing the documents withheld and explaining the exemption and privileges asserted as to each (Exemption Log). *See* Final Determination at 2; *see also* Exemption Log at R.R. at 80a-84a.

On September 18, 2019, the OOR issued its Final Determination granting Requesters' appeal in part and denying it in part. *See* Final Determination at 8. The Final Determination ordered the production of the previously withheld responsive documents and included an attachment that specifically detailed the information to be redacted from the responsive records the OOR ordered the Governor's Office to produce (Final Determination Attachment). *See* Final Determination at 8 & Final Determination Attachment at 1-3. The Governor's Office timely filed a petition for review with this Court on October 17, 2019.

On appeal,[4] the Governor's Office claims the OOR erred in determining that certain records were not exempt from access under the RTKL merely because they contain factual information. *See* Governor's Office's Brief at 8-11. Specifically, the Governor's Office argues the OOR improperly ordered it to produce redacted copies of documents it claims are protected by the attorney-client privilege and the attorney-work product doctrine. *See id.* at 12-15. The Governor's Office

---

[3] While the Final Determination explained that "[t]he OOR conducted *in camera* review of the 231 pages of withheld and redacted records[,]" we note that the Supplemental Certified Record actually contained 232 bates-stamped pages. Final Determination at 6.

[4] "This Court's standard of review of a final determination of the OOR is *de novo* and our scope of review is plenary." *Hunsicker v. Pa. State Police*, 93 A.3d 911, 913 n.7 (Pa. Cmwlth. 2014). "As to factual disputes, this Court may exercise functions of a fact-finder, and has the discretion to rely upon the record created below or to create its own." *Dep't of Labor & Indus. v. Heltzel*, 90 A.3d 823, 828 (Pa. Cmwlth. 2014) (en banc) (citing *Bowling v. Office of Open Records*, 75 A.3d 453 (Pa. 2013)). However, "pure questions of law . . . do not implicate our potential role as the fact-finder." *Id.*

5

also argues the OOR erred by not determining that the requested records were protected by the predecisional deliberative process exemption and chief executive privilege.[5] *See id.* at 16-18. Finally, the Governor's Office claims the OOR's attempt to redact portions of documents it claims were privileged was an inappropriate attempt to convert privileged, exempt records to public records. *See id.* at 18-21.

We begin with an overview of the RTKL. "The objective of . . . [this] [l]aw . . . is to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012). Further, the RTKL is remedial in nature and is "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions." *Pa. Dep't of Educ. v. Bagwell*, 114 A.3d 1113, 1122 (Pa. Cmwlth. 2015). "[C]ourts should liberally construe the RTKL to effectuate its purpose[.]" *Barnett v. Pa. Dep't of Pub. Welfare*, 71 A.3d 399, 403 (Pa. Cmwlth. 2013).

The Governor's Office is an office subject to the public records disclosure requirements of the RTKL. *See* Section 301 of the RTKL, 65 P.S. § 67.301. A record in the possession of a Commonwealth agency is presumed to be a public record, unless the records are: (1) exempted under Section 708 (exemptions) of the RTKL; (2) privileged; or (3) exempted under any a Federal or State law or regulation or a judicial order or decree. *See* Section 305(a) of the RTKL, 65 P.S. §

---

[5] The Governor's office notes in its brief that "[t]he deliberative process privilege, as codified by the RTKL, 'and the executive privilege are coterminous, as both []protect[] documents whose disclosure would []seriously hamper the function of government.'" Governor's Office's Brief at 8, n.1 (quoting *League of Women Voters v. Commonwealth*, 177 A.3d 1010, 1014 (Pa. Cmwlth. 2017) (quoting *Van Hine v. Dep't of State*, 856 A.2d 204, 208 (Pa. Cmwlth. 2004)). The Governor's Office, however, makes a separate argument with regard to the applicability of the "chief executive privilege." *See* Governor's Office's Brief at 16-18.

6

67.305(a); *see also* Section 102 of the RTKL, 65 P.S. § 67.102 (definition of "public record"). "Exemptions from disclosure must be narrowly construed due to the RTKL's remedial nature, which is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Office of Governor v. Scolforo*, 65 A.3d 1095, 1100 (Pa. Cmwlth. 2013) (quoting *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010)) (internal quotation marks omitted); *see also Bagwell*, 114 A.3d at 1122. The RTKL defines "privilege" as:

> The attorney-work product doctrine, the attorney-client privilege, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court interpreting the laws of this Commonwealth.

Section 102 of the RTKL, 65 P.S. § 67.102. "The burden of proving a privilege rests on the party asserting it." *Office of Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015). "Similarly, pursuant to Section 708(a) of the RTKL, an agency bears the burden of proving the application of any of the exceptions within Section 708(b) by a preponderance of the evidence."[6] *Id.*; *see also* Section 708(a) of the RTKL, 65 P.S. § 67.708(a). Accordingly, the Governor's Office bears the burden of proving that the attorney-client privilege, the attorney-work product doctrine, the predecisional deliberative process exemption, or the chief executive privilege protects the records from distribution to Requester. *See Davis*, 122 A.3d at 1191.

To establish that the attorney-client privilege applies to requested records, the agency claiming the privilege must demonstrate:

---

[6] "The preponderance of the evidence standard, which is the lowest evidentiary standard, is tantamount to a more likely than not inquiry." *Smith on behalf of Smith Butz, LLC v. Pa. Dep't of Envtl. Prot.*, 161 A.3d 1049, 1059 (Pa. Cmwlth. 2017) (internal quotation marks omitted).

7

(1) The asserted holder of the privilege is or sought to become a client.

(2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

(3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

(4) The privilege has been claimed and is not waived by the client.

*Davis*, 122 A.3d at 1191–92 (emphasis omitted). Once the agency establishes the first three prongs, the party challenging the invocation of the attorney-client privilege by the agency must prove waiver under the fourth prong. *Id.* Bald assertions of the applicability of the attorney-client privilege are insufficient to excuse an agency from its burden of demonstrating these elements. *See Clement v. Berks County*, OOR Dkt. AP 2011-0110, 2011 PA O.O.R.D. LEXIS 139, slip op. at 5-6 ("Simply invoking the phrase 'attorney-client privilege' or 'legal advice' does not excuse the agency from the burden it must meet to withhold records.").

The attorney-client privilege covers "not only confidential client-to-attorney communications but also confidential attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Levy v. Senate*, 34 A.3d 243, 245 (Pa. Cmwlth. 2011), *aff'd in part and rev'd in part*, 65 A.3d 361 (Pa. 2013) (citing *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011)). This Court has explained:

8

> [T]he privilege only applies where the client's ultimate goal is *legal* advice. The central requirement is that communications be for the purpose of securing or providing professional legal services. Thus . . . the privilege does not extend to business advice or protect clients from factual investigations.

*Davis*, 122 A.3d at 1192 (internal quotation marks and citation omitted; emphasis in original).

Pennsylvania Rule of Civil Procedure No. 4003.3 covers the attorney-work product doctrine and prohibits the disclosure of "the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa.R.C.P. No. 4003.3. "The 'work product rule' is closely related to the attorney-client privilege but is broader because it protects any material, regardless of whether it is confidential, prepared by the attorney in anticipation of litigation." *Nat'l R.R. Passenger Corp. v. Fowler*, 788 A.2d 1053, 1065 (Pa. Cmwlth. 2001). As this Court has further explained:

> The work-product doctrine offers broad protection to the mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, particularly in anticipation or prevention of litigation. Like the attorney-client privilege, under the RTKL the work-product doctrine protects a record from the presumption that the record is accessible by the public if an agency sets forth facts demonstrating that the privilege has been properly invoked.

*Heavens v. Pa. Dep't of Envtl. Prot.*, 65 A.3d 1069, 1077 (Pa. Cmwlth. 2013) (internal citations omitted).

Additionally, Section 708(b)(10)(i)(A) of the RTKL exempts from public disclosure an agency's predecisional deliberations. *See* 65 P.S. §

9

67.708(b)(10)(i)(A). Specifically, Section 708(b)(10)(i)(A) protects records that contain:

> [t]he internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. § 67.708(b)(10)(i)(A). "To establish this exception, [the agency seeking to invoke the privilege] must show: (1) the information is internal to the agency; (2) the information is deliberative in character; and, (3) the information is prior to a related decision, and thus 'predecisional.'" *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 379 (Pa. Cmwlth. 2013). "Only information that constitutes 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice' is protected as 'deliberative.'" *Id.* at 378. Further,

> [t]o qualify for exemption under the Predecisional Deliberative exception, an agency must explain how the information withheld reflects or shows the deliberative process in which an agency engages during its decision-making. First, agencies must show the communication occurred prior to a deliberative decision. Second, agencies must submit evidence of specific facts showing how the information relates to deliberation of a particular decision. Agencies may meet this burden by submitting an affidavit that sets forth sufficient facts enabling a fact-finder to draw its own conclusions.

*Id.* at 379 (internal citations omitted).

10

Additionally, the RTKL provides for redaction of responsive records as follows:

> If an agency determines that a public record, legislative record or financial record contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted.

Section 706 of the RTKL, 65 P.S. § 67.706.

Here, the OOR properly applied the deliberative process privilege, as codified by the RTKL. Importantly, the deliberative process privilege does not apply to factual information, "so long as the factual information is severable from the advice or underlying confidential deliberation of law or policymaking." *Ario v. Deloitte & Touche LLP (In re Objections of Liquidator to the Defendants' Notices of Intent)*, 934 A.2d 1290, 1293 (Pa. Cmwlth. 2007). "Purely factual information, even if used by decision-makers in their deliberations, is usually not protected" by the deliberative process privilege. *Koken v. One Beacon Ins. Co.*, 911 A.2d 1021, 1027 (Pa. Cmwlth. 2006). "Moreover, courts must narrowly construe the deliberative process privilege." *League of Women Voters*, 177 A.3d at 1018 (citing *One Beacon Ins. Co.*, 911 A.2d at 1027).

11

However, only public documents are subject to the redaction requirements of the RTKL. "[T]he RTKL's presumption of public access does not apply to privileged records and the RTKL does not give agencies the discretion to disclose privileged records." *Heavens*, 65 A.3d at 1077. "Furthermore, under the RTKL, records that are exempt under Section 708 or privileged are not considered public records and are therefore not subject to the redaction requirement contained in Section 706, which applies only to records that are public and contain information that is not subject to access." *Id.* (citing Section 706 of the RTKL, 65 P.S. § 67.706, & *Saunders v. Pa. Dep't of Corr.,* 48 A.3d 540, 543 (Pa. Cmwlth. 2012)).

Here, the Eisenstein Affidavit explained that the Governor's Office withheld "daily briefing emails circulated amongst Office of the Governor and executive agency officials . . . ." Final Determination at 6. To explain the purported application of the privileges and exemptions to withheld documents responsive to the Request, the Eisenstein Affidavit broadly stated:

> These briefing emails contain discussions and analysis of issues pending before the [Governor's] Office and executive agencies, and reflect observations and options for formulating strategies and responses. These emails are circulated in advance of agencies executing various policies or courses of action. These briefing emails reflect discussion internal to the [Governor's] Office and its executive agencies, and did not include communications with third parties or external participants.
>
> . . . the [Governor's] Office has also withheld records between agency officials and their counsel for purposes of seeking or providing legal advice regarding a non-criminal matter – that is, Executive Order 2015-05 and the *Markham-Smith* litigation that commenced in the Pennsylvania Commonwealth Court, or the mental impressions of counsel regarding those matters.

12

Final Determination at 6.

After receiving the parties' position statements and the Eisenstein Affidavit, the OOR conducted an *in camera* review of the Supplemental Certified Record to evaluate, in the first instance, the applicability of the Governor's Office's claimed privileges/exemptions and also to determine whether the documents contained purely factual material. The OOR determined that the records were not exempt from public disclosure because they contain factual information, which information the OOR stated "is not deliberative in character pursuant to Section 708(b)(10), nor is the information privileged because it does not contain any legal opinions or an attorney's mental impressions." Final Determination at 6. Therefore, the OOR determined that "the facts, studies, meetings, scheduled events, court decisions and the statuses of cases" contained within the documents reviewed *in camera* were subject to disclosure. *See id.* at 6-7. Further, the OOR determined that the court decisions and opinions and information regarding what occurred in matters before the courts contained in some of the responsive records amounted to non-exempt factual information. *Id*

> After examination, *in camera*, the OOR did determine that certain
>
> portions of the responsive records contain information that is exempt and/or privileged, such as the discussion of various approaches and options available, recommendations, mental impressions by counsel on litigation or other matters before the [Governor's] Office, legal questions and analysis/opinions, possible outcomes and courses of action. This information is subject to redaction or withholding of the responsive records as provided in the [Final Determination A]ttachment.

13

Final Determination at 7. Additionally, the OOR determined that the Governor's Office may appropriately redact all personal telephone numbers and personal email addresses from the responsive records. *Id.* at 7-8. Based on this analysis, the OOR provided line-by-line redactions of the responsive documents reviewed to protect the severable information contained therein and not subject to disclosure. *See* Final Determination Attachment at 1-3.

We agree with the OOR's Final Determination. Pursuant to the express purpose of the RTKL, factual information contained in documents responsive to the Request such as studies, meetings, scheduled events, court decisions and opinions, and the procedural posture and status of cases, is non-exempt information subject to disclosure. To the extent the responsive documents also contain other information not subject to disclosure, but capable of being severed from the factual information, redaction is the proper method for protecting that information from disclosure. *See* 65 P.S. § 67.706. The OOR considered the Governor's Office's explanations contained in the Eisenstein Affidavit and the Exemption Log for withholding certain responsive documents. The OOR then properly conducted an *in camera* review of the 232 pages the Governor's Office alleged were exempt or privileged. The OOR determined that the previously withheld records were subject to disclosure, but also produced the detailed three-page Final Determination Attachment that contained line-by-line redactions to be made to protect material and information within the records that should not be disclosed. *See* Final Determination at 6-7; Final Determination Attachment.

Our review of the Supplemental Certified Record confirms the OOR's determination that the records previously withheld in their entirety by the Governor's Office are properly subject to disclosure. As the OOR indicated, the

14

responsive emails withheld contain information about studies, meetings, scheduled events, court decisions and opinions, and the procedural posture and status of cases, all of which are subject to disclosure. To the extent the records contain information not subject to disclosure – including commentaries on court cases, decisions, and strategies and draft filings of ongoing cases – that information can be severed from the information in those documents that is subject to disclosure. The Final Determination Attachment comprehensively outlined the redactions necessary to shield from disclosure protectable discussions, mental impressions, and recommendations. These redactions allow compliance with the RTKL's mandate to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions, while at the same time preventing the disclosure of the portion of the records that is protected or otherwise should not be disclosed.

Additionally, to the extent the Governor's Office claims the records in question are protected by chief executive privilege, we disagree. *See* Governor's Office's Brief at 16-18. The chief executive privilege "protects a Governor (current and former) from state court compulsion to give testimony or produce records in legal proceedings challenging the constitutionality of legislation where the chief executive exercised his constitutional authority to act on legislation presented to him by the General Assembly." *League of Women Voters,* 177 A.3d at 1019. This privilege does not apply here where the implication is not in conflict with constitutional provisions, but rather encompasses consideration of the lesser deliberative process. *See id.* Despite the Governor's Office's concerns that the extension of the chief executive privilege is necessary to "prevent [] attempted intrusion into the Governor's administrative executive function[,]" *see* Governor's

15

Office's Brief at 17, the RTKL is designed to "promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions." *Bagwell*, 114 A.3d at 1122. The chief executive privilege envisioned by the Governor's Office would serve to defeat the RTKL's purpose.

     For these reasons, we affirm the OOR's Final Determination.


_____
CHRISTINE FIZZANO CANNON, Judge



Judge Crompton did not participate in this decision.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Office of the Governor,           :
         Petitioner       :
                                  :
      v.                       :
                                  :
Lindsey Wanner and        :
The Fairness Center,      :   No. 1453 C.D. 2019
         Respondents   :

O R D E R

AND NOW, this 29th day of June, 2020, the September 18, 2019 Final Determination of the Office of Open Records is AFFIRMED.


_____
CHRISTINE FIZZANO CANNON, Judge